**BAKER v. HUDSPETH, Warden.**

No. 2475.

Circuit Court of Appeals, Tenth Circuit.

July 9, 1942.

Rehearing Denied Sept. 2, 1942.

A. G. Bush, of Davenport, Ia. (Curtis Bush, of Davenport, Ia., on the brief), for appellant.

Summerfield S. Alexander, U. S. Atty., of Kingman, Kan., and Homer Davis, Asst. U. S. Atty., of Topeka, Kan., for appellee.

Before PHILLIPS, MURRAH, and WILLIAMS, Circuit Judges.

MURRAH, Circuit Judge.

The petitioner appeals from an order of the District Court denying a writ of habeas corpus, by which he sought release from custody of the respondent, alleging that he had been deprived of his constitutional right to a fair and impartial trial on an indictment charging violations of 18 U.S.C.A. § 338 (scheme to use the mails to defraud). The indictment containing seven counts was returned against the petitioner in the Eastern District of Arkansas. He was tried, convicted on each of the counts, and sentenced to a term of four years. On appeal the conviction was affirmed by the 8th Circuit Court of Appeals. Baker v. United States, 8 Cir., 115 F.2d 533. Petition for rehearing was denied and the Supreme Court refused to take the case on certiorari. 312 U.S. 692, 61 S.Ct. 711, 85 L.Ed. 1128. He was committed to the custody of the respondent on March 22, 1941.

Petitioner alleges that subsequent to the trial, conviction, affirmance and commitment, he discovered the facts which form the basis for the writ, and which denied him his constitutional right to a fair and impartial trial because: (1) illegal association of jurors with United States Marshal and his Deputies, and prejudicial instructions to the jurors by the United States Marshal; (2) use of intoxicating liquors by the jurors during the course of the trial; (3) he was denied an impartial jury because one of the jurors was disqualified for cause, which fact was unknown to him until after his commitment, and (4) he was denied the right to introduce competent evidence in his defense.

On the return of the writ, the petitioner appeared in person, and by counsel; testimony was offered in his behalf and depositions in behalf of both parties (primarily consisting of members of the trial jury, the Marshal and his Deputies) were introduced in evidence, from which the following facts appear without material dispute. The trial of the case consumed fifteen days during which time the jurors were not permitted to separate, but were furnished accommodations at a local hotel under the constant supervision of sworn bailiffs. At the beginning of the trial, counsel for the petitioner requested the Marshal to take charge of the jury because he wanted it "handled carefully." Whereupon, the Marshal explained to the jury the restrictions to be placed upon them during the trial, telling them it was an important and expensive trial for both parties, and that he did not want a mistrial or criticism of the Marshal's office in the supervision of the jury. The jury interpreted this talk by the Marshal as an explanation for the restrictions and a plea of co-operation on its behalf. The jurors were not permitted to read newspapers, or receive mail during the entire trial which had not been censored for information concerning the trial of the case. They were not allowed to take, or make, telephone calls, or to see members of their families, except in the presence of the bailiff. They were permitted the use of the Barber Shop and to make necessary shopping and business trips, but at all times under the supervision and in the presence of the bailiffs, the Marshal or his Deputies. By permission of the court and by agreement of the parties, they were permitted to go to a basketball game, to church, and on an outing to the zoo. On these trips they were transported in automobiles driven by the bailiff and the Deputy Marshals. On two occasions Deputy Marshals, including two lady Deputies, dined with the jurors in a private dining room used exclusively by the jury, one of the occasions being a birthday dinner for one of the jurors at which small favors were given and humorous talks made. The jurors were also permitted to play cards and dominoes, and on several occasions the jurors were permitted to purchase intoxicating liquors and to use it in their respective rooms, but at no time was any juror intoxicated or guilty of any unbecoming conduct. In fact, there is no evidence from which it can be inferred that the case was discussed among the jurors or with anyone else, including the Mar-

shal or his Deputies, and it is affirmatively shown that no word or act was designed or intended to influence the jury in the consideration of the case.

The trial court, after complete hearing, denied the petition for the writ, finding that the petitioner had a full, fair and impartial trial, and that the jury was not intimidated, coerced, or influenced in any way in the consideration of its verdict.

■ There is no right more sacred to our institutions of government than the right to a public trial by a fair and impartial jury; no wrong more grievous than its denial, and no greater duty is enjoined upon the courts than to preserve that right untarnished and undefiled. The denial of a fair and impartial trial, as guaranteed by the 6th Amendment to the Constitution, is also a denial of due process, demanded by the 5th and 14th Amendments, and the failure to strictly observe these constitutional safeguards renders a trial and conviction for a criminal offense illegal and void and redress therefor is within the ambit of habeas corpus. Ex parte Hans Nielsen, Petitioner, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118; In re Bonner, Petitioner, 151 U.S. 242, 259, 14 S.Ct. 323, 38 L.Ed. 149; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461; Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455, and Huntley v. Schilder, 10 Cir., 125 F.2d 250. Cf. Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406, and Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. ——. This is especially true where, as here, it is alleged that facts relied upon to establish the denial of a fair and impartial trial were discovered after opportunity for presentation to the appropriate trial or appellate court had passed. But, when as here, one charged with an offense against laws of the United States by a valid indictment, is tried in a court of competent jurisdiction, represented by counsel, before a jury of twelve men, under the superintendence of a judge of that court, which results in the conviction, affirmance and a denial of certiorari, it will be presumed in the absence of plain and cogent evidence to the contrary that the petitioner was accorded a fair and impartial trial as guaranteed by the Constitution, and that all rules of due process have been observed.

■■ A "fair and impartial trial" contemplates a trial before a jury of twelve im-

partial and unbiased men, neither more nor less, in the presence and under the superintendence of a judge having the power to instruct them as to the law and advise them in respect to the facts, and to have his guilt established by a unanimous verdict of that jury. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263. "Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests, and procedure is not chained to any ancient and artificial formula." United States v. Wood, 299 U. S. 123, 145, 57 S.Ct. 177, 185, 81 L.Ed. 78. But, deeply embedded in the right to a fair and impartial trial is the requirement that the jury of twelve men, chosen to sit in judgment, shall have no fixed opinion concerning the guilt or innocence of the one on trial, and that their ultimate verdict shall be based upon the facts as they are submitted to them by the court, under its instructions and superintendence. Anything less is a farce and a travesty upon justice.

■ Since the collateral attack on the conviction is based upon allegations of misconduct of the jury, the Marshal and his Deputies, who associated and communicated with them, which if true would be wholly obnoxious to the fundamental rules of fairness and justice, as contemplated by the spirit of petitioner's constitutional safeguards; and, since it is alleged that the facts relied upon were discovered subsequent to his trial, conviction, affirmance and commitment, we think the inquiry conducted by the trial court was an appropriate exercise of the extraordinary remedy afforded by habeas corpus.

■ The purpose of keeping the jury in one body during the trial of the case and not permitting them to separate except under the supervision of the bailiff or officers of the court, is to make sure that nothing they read, see, or hear shall influence them in the consideration of the case committed to them. 23 C.J.S., Criminal Law, § 1348, page 1010. If it is made to appear that a jury sworn to try a case is subjected or exposed to any matter or thing which might tend to prejudice or influence their consideration of the case, or if the behavior of any member thereof is unbecoming to a gentleman of the jury, a presumption arises against impartiality and that presumption can only be rebutted by a clear and positive showing that such matter, thing, or be-

havior did not influence their verdict. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; Stone v. United States, 6 Cir., 113 F.2d 70, 77; Ray v. United States, 8 Cir., 114 F.2d 508; Klose v. United States, 8 Cir., 49 F.2d 177; Lavalley v. State, 188 Wis. 68, 205 N.W. 412, 417; State v. Smith, 56 S.D. 238, 228 N.W. 240; Clemens v. Commonwealth, 224 Ky. 370, 6 S.W.2d 483, and Salyers v. Commonwealth, 274 Ky. 284, 118 S.W.2d 208. See Annotations in 22 A.L.R. 254, 34 A.L.R. 103, and 62 A.L.R. 1466. But, we must not permit the integrity of the jury to be assailed by mere suspicion and surmise; it is presumed that the jury will be true to their oath and conscientiously observe the instructions and admonitions of the court.

The petitioner does not allege or contend that the United States Marshal, his Deputies, or anyone else who contacted the jurors discussed the case with them or attempted in any way to influence their consideration of the case, but by an unwarranted amplification of the facts, the petitioner seeks to establish by inference and insinuations that the communications and association of the Marshal and his Deputies (including two lady Deputies) with the jury, coupled with the use of intoxicating liquors at the Hotel by the jurors in company with the Marshal and his Deputies amounted to misconduct per se, and that such misconduct vitiated the verdict of the jury.

■ It is the duty of the United States Marshal and his Deputies as sworn officers of the court to guard against any outside influences which might pervade the minds of the jurors in arriving at a just verdict, based upon the facts submitted to them by the court. United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300. It was, therefore, not improper, but commendable for the Marshal to admonish the jury and to ask for their co-operation, so long as such admonition did not tend to influence the jury in the consideration of the case.

■ Of course, the use of intoxicants has no proper place in the administration of justice and its use cannot be condoned where justice sits, but there is nothing in this record from which it can be inferred that any juror was intemperate, or that his conduct was unbecoming to a gentleman. Furthermore, nothing but ugly and ill-founded insinuations can be drawn from

the association of the jurors with the lady Deputies.

It is, also, contended that the petitioner was denied a fair and impartial trial because one of the jurors, named Goggins, was an Assistant Postmaster, which fact was unknown to the petitioner at the time he was selected and which fact he did not disclose in answer to a question concerning his occupation on voir dire; that by reason of his employment as an Assistant Postmaster he was disqualified for cause, thus preventing a fair and impartial trial, as guaranteed by the Constitution. The juror Goggins and his brother were partners at a hamlet in Arkansas; together they farmed approximately 3,000 acres of land and operated a small general store, whereat was also located the United States Post Office. Ordinarily the juror's brother operated the store and the Post Office in connection therewith. The juror was the overseer of the farm and worked in the store and Post Office only during his brother's absence. In order to expedite their business arrangement, Goggins was named Assistant Postmaster, and was acting in that capacity when questioned on voir dire concerning his occupation; he answered that he was a farmer and merchant. There is nothing to indicate that the answer to the question by the juror was calculated to deceive, but the juror considered himself a farmer and merchant and the facts support this view.

 At one time it was thought that an employee of the United States Government was not a qualified juror in a case in which the Government was a party. This rule was applied in a criminal trial for violation of the postal laws when one of the jurors was a postal employee. The disqualification was based upon the theory that at common law a servant of the crown or sovereign was not a qualified juror and this disqualification was carried over into the constitutional requirements. Crawford v. United States, 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392. It is now well established, however, by modern authority that a fair and impartial trial does not necessarily demand the exclusion of governmental employees from the jury. "The imputation of bias simply by virtue of governmental employment, without regard to any actual partiality growing out of the nature and circumstances of particular cases, rests on an assumption without any rational foundation." United States v. Wood, 299 U.S. 123, 149, 57 S.Ct. 177, 187, 81 L.Ed. 78. There is nothing in the particular circumstances here which tend to show or from which it can be inferred that the juror was, by reason of his casual employment in a Post Office, either disqualified for cause or favor, or that he entertained any prejudice or bias which prevented a fair and impartial consideration of the case. We conclude that none of petitioner's constitutional rights to a public trial by an impartial jury was denied.

 The petitioner also complains of the refusal of the trial court to admit certain evidence tendered in his behalf on the trial of the case. This point was effectively raised by appeal and decided adversely to him. Baker v. United States, supra. Furthermore, error in the admission or rejection of evidence in the trial of a case does not destroy the jurisdiction and it is not reviewable on habeas corpus. Matter of Moran, 203 U.S. 96, 105, 27 S.Ct. 25, 51 L.Ed. 105; McMicking v. Schields, 238 U.S. 99, 35 S.Ct. 665, 59 L.Ed. 1220; Moore v. Aderhold, 10 Cir., 108 F.2d 729, 732; Garrison v. Hudspeth, 10 Cir., 108 F.2d 733; Clarke v. Huff, 73 App.D.C. 351, 119 F.2d 204, 205, and Curtis v. Rives, App.D.C., 123 F.2d 936.

The judgment of the trial court is affirmed.