Richard LANE, Appellant,

v.

WARDEN, MARYLAND PENITEN-
TIARY, Appellee.

No. 8748.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 21, 1963.

Decided June 3, 1963.

Walter J. Wadlington, III (Court-assigned counsel), New Orleans, La. (Daniel J. Meador, Charlottesville, Va., on the brief), for appellant.

Jacques E. Leeds, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on the brief), for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge.

■ Richard Lane appeals from a denial of his petition for habeas corpus by the United States District Court for the District of Maryland[1] following his convictions in a Maryland state court as a third offender. Three separate indictments were returned against Lane—two for selling narcotics and one for having narcotics in his possession in violation of Maryland laws.[2] Pursuant to Maryland practice each of the three indictments averred, in addition to the facts of the particular offenses for which he was to be tried, the details of two prior convictions for violations of the Maryland narcotics laws. The indictments, in their entirety, were read to the jury at the outset of the trial. In his petition for habeas corpus and on this appeal, Lane alleges that he unsuccessfully demurred to the indictments on the ground that they contained averments of these prior offenses. Nothing contradictory appearing in the record, this allegation must be accepted as true. Cf. Turner v. State of Maryland, 303 F.2d 507, 509 (4th Cir., 1962); Clark v. Warden Maryland Penitentiary, 293 F.2d 479, 481 (4th Cir., 1961), cert. denied, 369 U.S. 877, 82 S. Ct. 1149, 8 L.Ed.2d 279 (1962); Holly v. Smyth, 280 F.2d 536, 537 (4th Cir., 1960).

Following jury verdicts of guilty, Lane was sentenced as a third offender under each indictment to fifteen years[3] in the state penitentiary, the sentences to run concurrently. Lane is now serving those sentences. On direct appeal to the Maryland Court of Appeals, Lane again contended, *inter alia,* that informing the jury of his previous offenses at the outset of his trial deprived him of a fair and impartial hearing. This con-

1. Lane v. Warden Maryland Penitentiary, 207 F.Supp. 780 (D.Md.1962).

2. Anno.Code of Maryland (1957), Art. 27, § 277.

3. Anno.Code of Maryland (1957), Art. 27, § 300.

tention was rejected and the convictions were affirmed in Lane v. State, 226 Md. 81, 172 A.2d 400 (1961). Application to the United States Supreme Court for certiorari was denied, 368 U.S. 993, 82 S.Ct. 611, 7 L.Ed.2d 529 (1962).

■■ Lane then petitioned the federal District Court for writ of habeas corpus, attacking the validity of the state sentences under the Fourteenth Amendment on the ground that a fair hearing before the jury was precluded by the prosecution by informing the jury, at the beginning of his trial, of his alleged prior offenses. In response to a show cause order, the State filed an answer alleging only that Lane had failed to exhaust his Maryland remedies because he had not attacked his convictions under the Maryland Uniform Post Conviction Procedure Act, Annotated Code of Maryland (1957), Art. 27, §§ 645A–J (Supp.1961). Without making a specific finding that Lane had exhausted his state remedies, the District Court dismissed the petition on the basis of Maryland decisions holding that the inclusion of prior convictions in the indictment, their submission to the jury, and specific findings by the jury of such prior convictions were necessary to support a verdict of guilty as a third offender. Since the State has not raised before us an issue of failure to exhaust state remedies, the point will be treated as abandoned, in accordance with this court's Rule 10, Paragraph 8. However, we note that Lane had exhausted his state remedies when the highest state court, on appeal, after considering the question on the merits, denied relief and subsequently the United States Supreme Court denied certiorari. See Brown v. Allen, 344 U.S. 443, 447–450, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

Lane contends, as he did in the Maryland Court of Appeals, that by informing the jury of the details of his two prior convictions at the beginning of trial, the State deprived him of a fair hearing on the charges for which he was then on trial and thereby denied him due process of law guaranteed by the Fourteenth Amendment. The State, however, counters with the argument that the practice of including allegations of former convictions in indictments and reading them to the jury has been standard Maryland criminal practice since 1878; that the information concerning prior convictions is a necessary part of the indictment in order that it allege every fact essential to justify the punishment inflicted; and that the jury was bound to consider prior convictions before it could find a defendant guilty as a multiple offender. Numerous decisions of the Maryland Court of Appeals are cited in support of the State's argument, including especially Beard v. State, 216 Md. 302, 140 A.2d 672 (1958); and Maguire v. State, 47 Md. 485 (1878).

The basic problem not resolved by the argument of the State or the decisions of the Maryland Court of Appeals derives from the likely prejudice to an accused when the jury, before determining his guilt or innocence on the current charges for which he is on trial, is informed that he has been previously convicted of similar crimes. Recognition of the fact that prejudice arises under such circumstances has resulted in various efforts to protect the rights of those accused of crime. Several generally accepted rules of evidence are especially significant in this respect.

■■ It is well established that evidence or allegations of prior crimes are inadmissible at a criminal trial either to establish guilt or to show that a defendant would be likely to commit the crime with which he is charged. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 (1892); Benton v. United States, 233 F.2d 491 (4th Cir., 1956); Lovely v. United States, 169 F.2d 386 (4th Cir., 1948); Dobbs v. State, 148 Md. 34, 129 A. 275 (1925); Weinstein v. State, 146 Md. 80, 125 A. 889 (1924). The rule and its rationale were explained and approved in Michelson v. United States, supra, where the Court said:

"Courts that follow the common-law tradition almost unanimously

have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, Greer v. United States, 245 U.S. 559 [38 S.Ct. 209, 62 L.Ed. 469], but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." 335 U.S. at 475–476, 69 S.Ct. at 218.[4]

The Court continued in Michelson by indicating that a defendant can elect to initiate a character inquiry to persuade the jury that he would not be likely to commit the offense charged, but in so doing he throws open the entire subject and makes himself vulnerable where the law otherwise shields him. In such instances wide latitude is given the prosecution in using rebuttal character witnesses and in cross-examining defendant's witnesses to impeach their credibility.

■ An important exception to the general rule is that when the defendant voluntarily submits himself as witness, he may, for purposes of impeachment, be interrogated concerning prior convictions and, in case he denies such convictions, proof thereof may be presented. See United States v. Pennix, 313 F.2d 524 (4th Cir., 1963); Walker v. United States, 104 F.2d 465, 470 (4th Cir., 1939). It is clear that placing information of a defendant's prior convictions before the jury can have a strong prejudicial effect. The cases which are cited in the following discussion illustrate this point.

In Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), where at a federal trial for unlawful dispensing of drugs the defendant neither took the stand nor offered any evidence and the trial judge specifically refused to allow the Government to prove that defendant had previously practiced medicine without a license on the ground that it would be irrelevant and prejudicial, newspaper information as to defendant's prior convictions for forgery and illegally prescribing drugs reached seven of the jurors. Even though the trial judge, prior to making a finding of no prejudice and denying a motion for a mistrial, privately interviewed each juror to learn what he had observed and received assurance from each he would not be influenced or prejudiced thereby, the Court found the exposure of the jurors to the newspaper articles so prejudicial in the setting of the case as to warrant the exercise of its supervisory power to order a new trial:

"＊ ＊ ＊ We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The

4. In a footnote to Michelson (335 U.S. at 475, n. 8, 69 S.Ct. at 218), the Supreme Court indicated some qualification of the rule that the state may not show defendant's prior trouble with the law "as when a prior crime is an element of the later offense; for example, at a trial for being an habitual criminal." We do not, however, construe this statement as placing the stamp of approval upon the Maryland procedure whereby, as an initial step of the trial, the jury is informed of the defendant's prior convictions.

prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. Cf. Michelson v. United States, 335 U.S. 469, 475 [69 S.Ct. 213, 93 L.Ed. 168]. It may indeed be greater for it is then not tempered by protective procedures." 360 U.S. at 312–313, 79 S.Ct. at 1172.

In United States v. Jacangelo, 281 F.2d 574 (3d Cir., 1960), a mistrial resulted from reading to the jury a codefendant's confession containing references to the defendant's previous convictions where the harmful remarks could readily have been deleted without destroying the usefulness of the confession as evidence of its author's guilt. The court followed Marshall v. United States, supra, saying,

"* * * [T]he evidence of involvement in other crimes was intrinsically inadmissible as highly prejudicial information about a collateral matter not connected with the offense charged. [Citations omitted.] This was a far more serious matter than the technical objection to the statement as hearsay. To inform the jury of prior crimes of a defendant is, in the view of the Supreme Court, so improper and so prejudicial that a mistrial must be declared, even when the jurors assert that they can and will disregard that information. * * *

"* * * [W]e think he should not have been subjected to additional risk of unwarranted harm through the pointless and wholly unnecessary disclosure of his prior complicity in crime. Therefore, scrupulous concern that criminal jury trials be safeguarded as far as possible against prejudicial influences dictates that the appellant be granted a new trial." 281 F.2d at 576–577.

In Holmes v. United States, 284 F.2d 716 (4th Cir., 1960), after the jury had been charged but before it began its deliberations, a deputy marshal in charge of the jury, in answer to a juror's inquiry as to where defendants were staying, remarked that one of them was in the county jail serving a sentence. This court noted the prejudicial effect of information reaching the jury as to prior convictions and granted a new trial.

Recognition of the prejudicial effects of information as to a defendant's prior convictions has not, however, been confined to federal courts. As early as 1921 the Connecticut Supreme Court of Errors in State v. Ferrone, 96 Conn. 160, 113 A. 452, revised its practice in prosecuting habitual criminals by prescribing that allegations of previous offenses should be printed on a separate page of the indictment. Under the "new" Connecticut practice, when the accused is brought to trial, the entire indictment is read to him out of the presence of the jury in order to apprise him of his prosecution as an habitual criminal and give him an opportunity to plead to each charge. But only that part of the indictment dealing with the current charge is read to the jury. This permits the jury to determine a defendant's culpability on the current charge independently and without knowledge of any prior convictions. If the accused is found guilty, the remainder of the indictment is read to the jury prior to sentencing and the defendant is then entitled to a jury determination of the habitual criminal issue. The reasoning behind this important procedural change is set forth in unequivocal terms in Ferrone:

"* * * It cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice or by considerations by which the jury should not be influenced, if during that trial allegations that he has twice before been convicted of state prison crimes have been read to the jury, and the evidence of his former convictions has been placed before them. It is beyond question that knowledge of such facts must necessarily prejudice the minds of his

triers against the accused, and cause him more serious injury than that which he would suffer from any improper remarks of the state's attorney. No one would claim that in a trial for a specific crime evidence of another crime committed by the accused could be admitted for the purpose of proving his guilt of the crime alleged. The purpose of a criminal trial in this state is not more to punish the guilty than to discharge the innocent. Whatever may have been the previous offenses or the bad character of the accused, the law surrounds him with the presumption that he is innocent of the specific crime with which he is charged, and, while that presumption has no evidential force, it casts upon the state the burden of proving that the accused is guilty of that specific crime by evidence of facts material and relevant to that crime. * * * Upon such evidence only, the jury are sworn to render their verdict. A man is not to be convicted of one crime by proof that he is guilty of another. Therefore our law sedulously guards against the introduction of evidence of any matter immaterial or irrelevant to the single issue to be determined. The purpose of these salutory laws might often be defeated if the minds of the jurors were subjected to the influence of facts or considerations having no legitimate bearing on the only question they have to decide, and their verdict be reached under the impulse of passion, sympathy, or resentment. Such a verdict is illegal and will be set aside. * * * The rule everywhere enforced excludes not only evidence of another crime, but also evidence tending to degrade the accused, to prejudice the

jury against him, to divert their minds from the real issue which they have to determine, or to persuade them by matters which they have no legal right to consider that the accused, for reasons other than those based upon legitimate evidence, was more likely to have committed the particular crime for which he is on trial.

" * * * [S]uch an information as this presents two separate issues, and the issue of former convictions does not relate to the issue of the commission of the specific crime alleged, and for which only the accused is to be tried, and the fact of former convictions does not tend in any way to prove the commission of the crime charged. It follows that, until the verdict of the jury on the principal issue has been rendered, no knowledge of the alleged previous conviction should reach them, either by reading that part of the information in which they are recited or by evidence relating to them. If the verdict on the principal issue be guilty, then the second issue may be submitted to the jury." [Citations omitted.] 113 A. at 457.

The problem of creating prejudice in the minds of the triers of fact by reading in open court the indictment containing allegations of prior criminal convictions of the accused is the same in the present case as it was in the Ferrone case. Many states have changed their procedure to avoid informing the jury of a defendant's prior convictions until after there has been a determination of guilt on the current charge.[5] Even Maryland has now joined this group by the enactment of Maryland Rule of Procedure 713, effective January 1, 1962, subsequent to Lane's trial and convictions.

---

5. Harris v. State, 369 P.2d 187 (Okl.Crim. 1962); Heinze v. People, 127 Colo. 54, 253 P.2d 596 (1953); State v. Stewart, 110 Utah 203, 171 P.2d 383 (1946); Robertson v. State, 29 Ala.App. 399, 197 So. 73 (1940); McCallister v. Commonweath, 157 Va. 844, 161 S.E. 67 (1931); Va.Code Ann. (1950) § 53–296 (as amended 1948); W.Va.Code Ann. (1961) §§ 6130, 6131 (as amended 1943).

■ It is a rule not now subject to challenge that constitutional due process of law requires a fair hearing in a fair tribunal. Although the Constitution does not demand the use of jury trials in a state's criminal procedure,[6] where a jury trial is provided it must be a fair trial.[7] We find an apt description of this constitutionally guaranteed fair and impartial trial in Baker v. Hudspeth, 129 F.2d 779, 781–782 (10th Cir., 1942), cert. denied, 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546:

"A 'fair and impartial trial' contemplates a trial before a jury of twelve impartial and unbiased men * * *. 'Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests, and procedure is not chained to any ancient and artificial formula.' United States v. Wood, 299 U.S. 123, 145, 57 S.Ct. 177, 185, 81 L.Ed. 78. But, deeply embedded in the right to a fair and impartial trial is the requirement that the jury of twelve men, chosen to sit in judgment, shall have no fixed opinion concerning the guilt or innocence of the one on trial, and that their ultimate verdict shall be based upon the facts as they are submitted to them by the court, under its instructions and superintendence. Anything less is a farce and a travesty upon justice."

At the outset of Lane's trial the three indictments, each averring in repetitious fashion the details of two prior convictions for violations of the Maryland narcotics laws, were read to the jury. This information, presented by the State itself as a matter of historical fact, can hardly have failed to influence the jurors at least as much as equivalent information obtained from newspaper articles, radio and television broadcasts, or remarks of a deputy marshal. Here, there was far less ground for jurors to doubt the truth of the matter than in cases where information comes from an unofficial source which has no responsibility for the conduct or ultimate fairness of the trial. Moreover, the likelihood of prejudice was enhanced in this case by the fact that the prior convictions of which the jurors were informed involved narcotics violations quite similar to those for which Lane was being tried. No issues of intent or intermingling of offenses made the information on these convictions relevant to the determination of Lane's guilt on the current charges. However, it is patent that jurors would be likely to find a man guilty of a narcotics violation more readily if aware that he has had prior illegal association with narcotics. Here is a classic instance of information that is nearly certain "to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." Michelson v. United States, quoted supra. Such a prejudice would clearly violate the standards of impartiality required for a fair trial.

In the case at bar, information of a character generally acknowledged to be prejudicial to a criminal accused was revealed to the jury before any evidence was offered. Although the underlying reasons for the time-honored Maryland practice, informing the accused of all elements of the charges against him and providing the basis for a jury verdict of guilty as an habitual offender and for increased punishment are meritorious as abstract principles, the accused had no opportunity to protect himself from the

6. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L. Ed. 2043 (1947).

7. Irvin v. Dowd, supra; Fay v. New York, supra; Palko v. Connecticut, 302 U.S.

319, 58 S.Ct. 149, 82 L.Ed. 288 (1937); Hughes v. Heinze, 268 F.2d 864 (9th Cir., 1959); Baker v. Hudspeth, 129 F. 2d 779 (10th Cir., 1942), cert. denied, 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546.

impact on the jury of information of his prior convictions. The jury's exposure to the harmful information was not the result of Lane's placing his character in issue and suffering the State's rebuttal; nor was it the consequence of his election to testify in his own behalf and the State's effort to impeach his credibility. From either of the above elections the accused could hope to gain some benefit; absent that expected benefit, he could prevent the State's use of evidence of his prior convictions under the general rules of evidence. But in Maryland under the procedure used in Lane's trial, reading the indictment to the jury was merely the commencement of their exposure since prior convictions had to be proved also during the trial.

Furthermore, and of special significance in this case, the revelation of Lane's prior convictions to the jury prior to a finding of guilt on the current charges was entirely unnecessary. Alternative procedures which were well-known included the Connecticut practice described above (also used in England and California) and the West Virginia statutory practice where a separate and independent proceeding is used to re-sentence the habitual offender subsequent to his conviction and sentencing for the current crime.[8] Noting these alternatives in its opinion in Beard v. State, 216 Md. 302, 140 A.2d 672 (1958), (before Lane's current crimes are alleged to have occurred) the Court of Appeals of Maryland suggested that the Rules Committee consider changing the Maryland practice.[9] The resulting Rule 713

provides for the elimination of the practice here attacked if the accused so elects.[10]

In the case at bar the probability of prejudice to the defendant Lane was overwhelming, yet the offending disclosure could readily have been avoided. In such a case it is the duty of the federal courts to safeguard against the state's violation of the individual's constitutional right to a fair and impartial trial. The right to a fair trial is one of those rights which "have been found to be implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

The duty of a federal court in considering a habeas corpus petition for relief from conviction by a jury tainted by prejudice is clearly stated in Baker v. Hudspeth, supra:

"There is no right more sacred to our institutions of government than the right to a public trial by a fair and impartial jury; no wrong more grievous than its denial, and no greater duty is enjoined upon the courts than to preserve that right untarnished and undefiled. The denial of a fair and impartial trial, as guaranteed by the 6th Amendment to the Constitution, is also a denial of due process, demanded by the 5th and 14th Amendments, and the failure to strictly observe these constitutional safeguards renders a trial and conviction for a criminal offense illegal and void and redress there-

8. The statutory West Virginia procedure was considered by the Court in Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), and Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912).

9. At the conclusion of its comprehensive discussion of Maryland practice in habitual criminal cases in Beard, supra, the court said:
  "* * * We find no constitutional requirement that an indictment allege a prior conviction or convictions in any particular manner or in any particular

place, so long as any such prior offenses are clearly stated as the basis for increased punishment if the accused is convicted of the current offense charged against him. Neither do we find any constitutional requirement that the jury must pass on the accused's alleged prior convictions at the same time that it passes upon the alleged current offense." 216 Md. at 320, 140 A.2d at 682.

10. See Maryland Rules of Procedure (1961 Ed.), Rule 713 at pages 266 and 267.

for is within the ambit of habeas corpus." 129 F.2d at 781.

■ We reach the conclusion that under the facts of this case the reading to the jury, at the commencement of Lane's trial, of that portion of the indictments relating to his prior convictions destroyed the impartiality of the jury and denied him due process of law. Therefore, the judgment of the District Court is reversed and the case is remanded with instructions that Lane be released from the custody of the respondent unless within a reasonable time the State of Maryland takes appropriate steps to grant petitioner a new trial.

Reversed and remanded.