UNITED STATES of America ex rel.
John LOWRY

v.

David N. MYERS, Superintendent, State
Correctional Institution, Graterford,
Pennsylvania.

Misc. No. 2973.

United States District Court
E. D. Pennsylvania.

June 14, 1965.

Melvin Rubin, Philadelphia, Pa., for petitioner.

David Durben, Asst. Dist. Atty., Doylestown, Pa., for respondent.

JOSEPH S. LORD, III, District Judge.

Relator in this petition for a writ of habeas corpus was convicted in 1951 by a jury in the Court of Quarter Sessions of Bucks County, Pennsylvania. The jury under Pennsylvania practice fixed the sentence at life imprisonment. The burden of his complaint here, as it was in the state courts where he has exhausted his remedies, is that his prior criminal record was introduced into evidence over his objection. He claims that this resulted in a trial so fundamentally unfair as to result in a denial of due process. The resolution of the question raised depends entirely on an appraisal of the state record, which is before me, and no hearing is required.

Lowry was indicted for his part as the driver of the getaway car in a felony murder. The evidence against him was largely circumstantial, except for a statement by Lowry in which he admitted driving the other two defendants (who were tried separately) to and from the scene of the crime, but denied any knowledge of their felonious purpose. There was evidence that the car was driven from the scene rapidly and without lights. There was testimony that about forty-five minutes after the crime defendant appeared in a diner asking about the commotion and stating that he had been asleep (although his statement clearly refutes this). He asked two waitresses if they had seen the car, and when one said she had and the other that she had not, he commented to the latter: "You are a smart girl, Pat, to keep your mouth shut."

After the Commonwealth had presented all of its substantive evidence, it then proposed to introduce the defendant's criminal record. The following occurred at side bar (N.T. 1186–1187):

"MR. BACK: We are not going to ask for an offer of proof, because that is not necessary, but this is to prove the prior record, I believe.

"MR. CURTIN: That is correct.

"MR. BACK: We will just enter a formal objection, without stating any reason, so that one is noted on the record.

"THE COURT: Well, are you going to ask for the infliction of the death penalty?

"MR. CURTIN: Yes. The possible testimony which the Commonwealth is about to produce is to show the prior record of the defendant."

Thereafter, not only were records of prior *convictions* introduced, with the sentences imposed, but also of prior *charges* on which defendant had been acquitted.

The record from Philadelphia County showed the following:

| Indictment | | Charge | Disposition | Sentence |
|---|---|---|---|---|
| 301 July 1934 | | larceny of auto, receiving stolen goods (r.s.g.) | not guilty | |
| 302 | " " | operating vehicle without the consent of the owner (o.v.w.c.o.) | not guilty | |
| 943 Feb. 1935 | | larceny of auto, r.s.g. | plead guilty | 2½–5 yrs. |
| 944 | " " | o.v.w.c.o. | " " | See 943 |
| 945 | " " | larceny of auto, r.s.g. | not guilty | |
| 946 | " " | o.v.w.c.o. | " " | |
| 947 | " " | larceny of auto, r.s.g. | plead guilty | See 943 |
| 948 | " " | o.v.w.c.o. | " " | See 943 |
| 456 Apr. 1938 | | larceny, r.s.g. | " " | 18 mo. – 3 yrs. |
| 457 | " " | larceny, r.s.g. | " " | 1–2 yrs. |

The record from Montgomery County showed two convictions for larceny, with a sentence of two and one-half to five years, and one acquittal of operating a motor vehicle without the consent of the owner.

 As I read the law of this Circuit, by which I am bound, it is the duty of the district judge to make a value judgment from the state records as to whether or not the introduction of the prior criminal record was "gravely prejudicial" and rendered the trial "fundamentally unjust." United States ex rel. Scoleri v. Banmiller, 310 F.2d 720 (C.A. 3, 1962). This determination, in turn, requires an evaluation of the number and nature of the crimes introduced and the quality of the Commonwealth's substantive proof. Thus, in United States ex rel. Rucker v. Myers, 311 F.2d 311 (C.A. 3, 1962), where the writ was denied in spite of proof of prior convictions for voluntary manslaughter and aggravated assault, the court said, at pages 313–314:

"* * * Although the jury [in Scoleri] had been instructed to consider this record only in determining the penalty for first degree murder and not on the question of guilt or innocence, this court concluded that such proof of a *large number of previous robberies* by the accused was 'gravely prejudicial' on the controverted question of his participation in the instant robbery.

* * * * *

" * * * More generally, the evidence [in Rucker] was clear, overwhelming and uncontroverted on every point essential to the proof of first degree murder. There was neither a significant conflict in the evidence nor a doubtful issue of fact in connection with which the jury's awareness of the defendant's prior conviction of voluntary manslaughter and aggravated assault could have been prejudicial. * * * " (Emphasis added)

In the present case, defendant's alleged co-conspirators did not embark upon the crime of murder. They embarked upon the crime of robbery. Admittedly, defendant was at the scene of the crime, and admittedly he had driven the others there. The sole question was whether he had done so with knowledge of the others' purpose and as a willing and active participant terein. It must be remembered that robbery involves the taking of another's property. So does larceny. Here, unlike Rucker where defendant had admitted his participation in the crime, defendant's statement, if believed, exculpated him from criminal complicity. This is not a case where the evidence was "clear, overwhelming and uncontroverted" or where there was no "doubtful issue of fact in connection with which the jury's awareness of defendant's prior" convictions could have been prejudicial. The defendant's record of seven prior charges and five convictions were of precisely the type that with the evidence in doubtful balance would or could sway a jury into concluding that defendant on this occasion, as on those other previous ones, intended to enrich himself at the expense of an innocent victim. Here was a man who had taken others' property five times before and who had served substantial time in jail. Here was a man who had a propensity for obtaining property without working for it by taking that of other people. What more reasonable conclusion by a jury of laymen than that he was bent on doing precisely the same thing on the night of the crime. Indeed, although the evidence was not properly in the case to persuade the jury of guilt, its very vice is in its overpersuasiveness. See Michelson v. United States, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

The trial judge instructed the jury on this evidence as follows (N.T. 1313–1314):

" * * * Now, there was evidence offered by the Commonwealth tending to show that the defendant had been involved in a number of criminal offenses in the past. The District Attorney has already referred and commented upon this phase of the trial and told you it was not offered for the purpose of influencing you in determining the guilt or innocence of this defendant in this case. We again remind you of that and say to you that this testimony of the defendant's prior criminal record was admitted only for one purpose, and that was to provide you, in the event you arrived at that point in your deliberations where it became necessary for you to pass upon the penalty to be inflicted upon the defendant, with information which might throw light upon the character of the defendant, but inasmuch as the Commonwealth is not pressing for a verdict of murder of the first degree with the death penalty, therefore, we make no further comment on this phase of it, but again remind you that you are not to consider it in determining whether or not the defendant is guilty of this offense. It is not offered for that purpose and has no place in this trial for that purpose. * * * "

It is worthy of some note that by that time in the trial, the jury had no real discretion in fixing the punishment, for they had been specifically told by the judge that the Commonwealth was not seeking the death penalty, and immedi-

ately following the instruction just quoted, the trial judge charged (N.T. 1314):

> "* * * In this case, therefore, as we view the evidence, there can be one of two verdicts, namely, either murder of the first degree with life imprisonment, or not guilty. * * *"

Nowhere did the judge instruct the jury that at that stage the evidence was in for *no* purpose and that they should disregard it completely. However, even a more explicit charge could scarcely have wiped from the jurors' mind the prejudicial effect of five previous larcenies when the very issue they had to decide was whether on this occasion defendant intended to commit a crime closely akin to larceny. In Scoleri, the court said, 310 F.2d at page 725:

> "* * * Despite the careful charge of the experienced judge presiding at Scoleri's trial, in which he explained to the members of the jury their function of finding the defendant guilty or not guilty of murder and their separate function of fixing the penalty of death or life imprisonment, we cannot believe that the procedural scheme imposed by Section 701 of the Criminal Code of 1939 and the 'Parker Rule' would permit the jurors to put the knowledge of Scoleri's twenty-five convictions or pleas of guilty out of their minds while considering his guilt or innocence. * * *"

Unlike Rucker I am unable to say that the present record "provides no basis for apprehension that the jury determination of guilt may have been unfairly influenced by the evidence of prior crimes." 311 F.2d at page 315. On the contrary, it is inconceivable to me that its determination was not so influenced. It follows that Lowry's trial was so fundamentally unfair as to be constitutionally defective.

In so deciding I am following what I apprehend to be the law of this Circuit. I do not attempt to rationalize this holding with those of the Supreme Court in the recidivist cases because I cannot. Cf. Graham v. State of West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912); McDonald v. Commonwealth of Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); Moore v. State of Missouri, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895).

### ORDER

And now, this 14th day of June, 1965, the petition of John Lowry for a writ of habeas corpus is granted.