Judgment will be entered for plaintiffs as prayed.

---

**William H. HAGGARD, Petitioner,**

v.

**C. Murray HENDERSON, Warden, Tennessee State Penitentiary, Nashville, Tennessee, Respondent.**

Civ. No. 4089.

United States District Court
M. D. Tennessee,
Nashville Division.

March 25, 1966.

Norman D. Lane, Nashville, Tenn., for petitioner.

Ed R. Davies, Special Counsel, State of Tennessee, Nashville, Tenn., for respondent.

WILLIAM E. MILLER, Chief Judge.

Petitioner was convicted in the Knox County Criminal Court on a charge of third degree burglary and of being an habitual criminal, both offenses having been presented to the same jury at the same time. He was given a sentence of three years on the burglary charge and a life sentence under the habitual criminal conviction. It is his position that the simultaneous trial of the charges before the same jury constituted a denial of due process of law and rendered his conviction void.[1] To substantiate this claim,

---

1. Petitioner's further contention was that the trial judge had refused to permit testimony from seven witnesses who allegedly would have testified as to his innocence. In this respect, petitioner alleged that he had been denied due process. It has been stipulated by the attorney for petitioner and the attorney for respondent that the bill of exceptions on file with the Clerk of the Supreme Court of Tennessee at Knoxville shows that:

    1. The only witnesses offered by the defense were the defendants; and

    2. The defense rested its case following the receipt of testimony from the two defendants. It was further stipulated that neither the motion for a new trial filed by petitioner's counsel nor the assignments of error contained any reference to the trial court's alleged refusal to permit testimony by a witness for petitioner. These stipulations are supported by the affidavit of the trial judge who positively denies petitioner's allegation that he refused to permit testimony from witnesses proffered by petitioner's counsel.

    The affidavits submitted on petitioner's behalf are of a general nature, and

petitioner relies on Harrison v. State, Tenn., 394 S.W.2d 713 (Sept. 14, 1965), a case decided subsequently to petitioner's conviction and confinement. In considering the procedure to be followed in trying an habitual criminal charge under Tennessee's statute (7 Tenn.Code Anno. Sec. 40–2801 et seq.), the Court held that:

> " * * * it is prejudicial error to allow knowledge or evidence of previous convictions, enhancing the penalty upon conviction of the present crime, to be placed before the jury prior to their determination of defendant's guilt or innocence of the present crime." id at 717.

This holding, however, is not dispositive of the question now presented. For the Tennessee Supreme Court was nevertheless of the view that the challenged procedure did not constitute a denial of due process, and that the rule disapproving it should be applied only to "future cases." The court specifically stated:

> " * * * we will not permit this new rule to serve as a basis for collateral attack on convictions upon which prisoners have either exhausted or waived the appellate process." Harrison v. State, supra, at 717.

As further clarification the court then held:

> " * * * this decision is not to be given retroactive effect beyond those cases now in the appellate process." id at 718.[2]

Can this limitation on the operative effect of a procedure which in a jury trial permits the simultaneous introduction of proof necessary to sustain both the substantive offense and the habitual criminal charge be harmonized with the requirements of due process under the Fourteenth Amendment?[3] The Court has concluded that this issue must be answered in the negative.

Directly in point here is the Fourth Circuit's well-reasoned decision in Lane v. Warden, Maryland Penitentiary, 320 F.2d 179 (4th Cir. 1963), in which petitioner challenged the Maryland habitual criminal procedure which permitted the introduction of his prior convictions at the outset of his trial on the substantive offense. After a general discussion of when and under what circumstances prior convictions were admissible, the court held that the state procedure "destroyed the impartiality of the jury and denied him due process of law." id at 187. The prior convictions in Lane, as in this case, were of the same general character as the substantive offense, a fact which the court felt "enhanced" the likelihood of prejudice. But whereas in the Lane case two prior convictions were alleged in the indictment, in this case three prior convictions on various charges of housebreaking and larceny and receiving and concealing stolen property were alleged in the indictment and read to the jury along with the current charge of burglary. The impact of such a procedure upon the minds of the triers of fact can hardly be doubted.

The view adopted by the Lane court is also consistent with decisions in the field of evidence. Subject to exceptions, it has been repeatedly held that evidence of other offenses not relevant to the charge on trial may not be introduced. Harper v. United States, 99 U.S.App.D.C. 324, 239 F.2d 945 (D.C.Cir.1957). Under some circumstances, moreover, the in-

---

do not support his allegations. Furthermore, because of the particular facts stipulated as to the bill of exceptions, the motion for a new trial, and the assignments of error, the Court must resolve the factual issue against the petitioner.

2. Since this is the view of the highest state court, it is idle to insist that petitioner is barred from relief here until the issue has been again presented to the state courts.

3. That the substantive offense and the habitual criminal charge were tried in a single proceeding before the same jury is alleged by petitioner in his motion and supplemental pleading filed November 30, 1965. In its amended response to the supplemental pleading, filed on March 24, 1966, the respondent admits this allegation.

troduction of related offenses may constitute an error of constitutional magnitude. United States ex rel. Lowry v. Myers, 242 F.Supp. 477 (E.D.Pa. June 14, 1965). In the latter case the court held in a prosecution for a murder which had occurred in the course of a robbery that the introduction of prior charges and convictions of larceny was "so fundamentally unfair as to be constitutionally defective," id at 480. In granting a petition for writ of habeas corpus on due process grounds, the court stated:

> "Here was a man who had taken others' property five times before and who had served substantial time in jail. Here was a man who had a propensity for obtaining property without working for it by taking that of other people. What more reasonable conclusion by a jury of laymen than that he was bent on doing precisely the same thing on the night of the crime. Indeed, although the evidence was not properly in the case to persuade the jury of guilt, its very vice is in its overpersuasiveness. See Michelson v. United States, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948)." id at 479.

*Myers* involved the former Pennsylvania procedure which, in first degree murder cases, required that the jury ascertain at the same hearing both the verdict and the punishment. Despite this distinction, the instant case presents essentially the same constitutional problem, i. e., whether the introduction of former convictions serves to deprive the defendant of a fair trial on the substantive offense.

Adverting to the habitual criminal procedure, the Court of Appeals for the Fifth Circuit in Breen v. Beto, 341 F.2d 96 (5th Cir. 1965), declined to follow the ruling in *Lane,* supra:

> " * * * we are of the firm view that that case [*Lane,* supra] was not well decided and that the correct view of the law is otherwise." id. at 97.

The Fifth Circuit has adhered to this ruling in subsequent cases, notably Reed v. Beto, 343 F.2d 723 (5th Cir. April 7, 1965). In this latter case, however, the Supreme Court has granted certiorari, and an authoritative answer to the problem here presented may be forthcoming, 382 U.S. 1025, 86 S.Ct. 649, 15 L.Ed.2d 539 (January 31, 1966).[4]

It is true that Supreme Court dicta indicate oblique approval of the procedure now challenged. For instance, in Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954), the defendant appeared for trial on a felony charge and was then informed that he would also be tried under Tennessee's habitual criminal statute. He had waived counsel on the substantive charge but asked for a continuance in order to obtain counsel to represent him on the habitual criminal charge. This request was denied. He was then tried on both the substantive offense and the habitual criminal charge, and found guilty on both counts. In its opinion, the Court first stated that:

> " * * * even though the Act does not create a separate offense, its applicability to any defendant charged with being an habitual criminal must be determined by a jury in a judicial hearing. * * * That hearing and the trial on the felony charge, although they may be conducted in a single proceeding, are essentially independent of each other." Chandler v. Fretag, supra 348 U.S. at 8, 75 S.Ct. at 4.

The Court, however, reversed the lower court on the ground that the defendant had been denied counsel:

> "By denying petitioner any opportunity whatever to obtain counsel on the habitual criminal accusation, the trial court deprived him of due process of law as guaranteed by the Fourteenth Amendment." id at 10, 75 S. Ct. at 5.

4. Since the writ was probably granted to resolve the conflict as between circuits, the advisability of a stay pending a ruling by the Supreme Court has been considered. Nevertheless, since this is a habeas corpus proceeding involving personal liberty, this course would not appear to be indicated.

Since the Court's only ruling was that denial of counsel on the habitual criminal charge was a violation of due process rights, (the Court emphasizing the essentially independent character of the two offenses) its observation that trial of the two charges "may be conducted in a single proceeding," was at best parenthetical and not a necessary facet of the decision.

The dictum in Chandler v. Fretag, supra, was reiterated in Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Petitioner in that case was convicted of second degree murder. After his motion for a new trial had been overruled, petitioner was then informed that he would be prosecuted under West Virginia's habitual criminal statute. The conviction was attacked on two grounds. First, it was asserted that due process required formal notice of the habitual criminal charge before trial on the substantive offense. Second, petitioner alleged that the act was applied to only a minority of those subject to its provisions. The Court rejected both contentions, holding that under the particular circumstances the petitioner was not in a position to claim lack of a "fair opportunity" to answer the habitual criminal charge on the issue of identity. id at 453, 82 S.Ct. 501. The West Virginia procedure in Oyler v. Boles, supra, actually required a separate determination on the habitual criminal charge, with the result that the court was not required, in disposing of the case, to indicate approval of a different procedure.

In both Oyler v. Boles, supra, and Chandler v. Fretag, supra, the Supreme Court referred to a prior West Virginia case, Graham v. State of West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912), in which it was held that a prisoner was not deprived of due process of law because the question as to former conviction was passed upon separately. Indeed, as the Court pointed out, this had been the statutory procedure in England since the Act of 6 and 7 Will. IV, c. 111 [enacted in 1836]:

"It was established by statute in England that, although the fact was alleged in the indictment, the evidence of the former conviction should not be given to the jury until they had found their verdict on the charge of crime. The act of 6 and 7 Will. IV, c. 111, provided that it should 'not be lawful on the trial of any person for any such subsequent felony to charge the jury to inquire concerning such previous conviction until after they shall have inquired concerning such subsequent felony, and shall have found such person guilty of the same; and whenever in any indictment such previous conviction shall be stated, the reading of such statement to the jury as part of the indictment shall be deferred until after such finding as aforesaid.' Exception was made in cases where the accused gave evidence of good character to meet the charge of crime, whereupon the prosecutor might show the former conviction before the verdict of guilty had been returned. And in Regina v. Shuttleworth, 3 C. & K. 375, 376, Lord Campbell thus stated the practice under the statute: 'It is the opinion of all the judges—The prisoner is to be arraigned on the whole indictment, and the jury are to have the new charge only stated to them; and if no evidence is given as to character, nothing is to be read to the jury of the previous conviction till the jury have given a verdict as to the new charge. The jury, without being resworn, are then to have the previous convictions stated to them; and the certificate of it is to be put in, and the prisoner's identity proved.' See 24 & 25 Vict., c. 96, § 116."

Many recent decisions of the United States Supreme Court reflect its continuing concern for refinement of the processes of criminal law enforcement and adjudication to guarantee a fair trial for the criminally accused. Examples of this attitude could be multiplied, but typical are cases extending the right of an accused to be represented by counsel,

Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and those restricting the right to use confessions, Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). More closely analogous to the present case is Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), in which the court disapproved as an abridgement of due process the New York procedure under which the jury determined the voluntariness of an alleged confession. In its assessment of this procedure the court made several observations: first, that it was "impossible" to determine, after a general verdict of guilty, whether the jury had found the confession voluntary, or had found it involuntary and ignored it, id at 379, 84 S.Ct. 1774; second, in its consideration of the evidence of the voluntariness of the confession and the corroborating evidence the jury's judgment as to the defendant's credibility and its assessment of the facts relative to the confession could be distorted, id at 381, 84 S.Ct. 1774; and third, that the issues of voluntariness and truthfulness as to the confession would be so interwoven that it could not be determined what had been decided and how it had been decided, id at 386–387, 84 S.Ct. 1774. Restated, the Court's position essentially was that the jury might find the confession involuntary, but still permit it to influence and determine the decision on the substantive charge.

> "It is difficult, if not impossible, to prove that a confession which a jury has found to be involuntary has nevertheless influenced the verdict or that its finding of voluntariness, if this is the course it took, was affected by the other evidence showing the confession was true. But the New York procedure poses substantial threats to a defendant's constitutional rights to have an involuntary confession entirely disregarded and to have the

coercion issue fairly and reliably determined." id at 389, 84 S.Ct. at 1787.

The Court recognizes, of course, that the result in Jackson v. Denno, supra, was predicated on the infringement of what had already been determined to be a constitutional right—the right to be free from the incriminating effects of a coerced confession. Nevertheless, some of the reasons given by the Court to disapprove the New York procedure for determining whether a confession was voluntarily given are apposite in this case. For it would be "difficult, if not impossible," to determine whether a jury under the procedure now being scrutinized had restricted the habitual criminal charge evidence to that charge only, or whether it had permitted this evidence to affect the determination of guilt on the substantive offense. The threat of prejudice, in the Court's opinion, is inseparable from such a procedure—a threat so real, so ever-present, and so immune from review and correction that it cannot be reconciled with present-day conceptions of the degree of fairness required in criminal prosecutions.

The Court is thus of the opinion that the introduction of former convictions to prove an habitual criminal charge in conjunction with a trial on the substantive offense constitutes, not merely a denial of "procedural fairness," Harrison v. State, Tenn., 394 S.W.2d 713 (Sept. 14, 1965), but a denial of due process of law.

It is therefore directed that an order be submitted to the Court adjudging that the petitioner, William H. Haggard, be released from the further custody of the Respondent, C. Murray Henderson, Warden of the Tennessee State Penitentiary at Nashville, and delivered to the custody of the Sheriff and District Attorney-General for Knox County, Tennessee, not later than ten days from March 25, 1966, if the state intends to retry the petitioner for the offense out of which the instant proceeding arose. In the event the petitioner should be retried on both the substantive offense and the habitual criminal charge, the procedure for such trial

shall be in conformity with the procedure outlined by the Supreme Court of Tennessee in Harrison v. State, supra. In the event it is not intended to retry the petitioner, it is directed that he be released from further custody forthwith.