## HENDERSON *v.* WARDEN OF THE MARYLAND PENITENTIARY

[App. No. 96, September Term, 1964.]

*Decided February 12, 1965.*

Before PRESCOTT, C. J., and HAMMOND, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ.

HAMMOND, J., delivered the opinion of the Court.

The applicant for leave to appeal, James William Henderson, makes three contentions. The first is that his constitutional rights were violated in his trial in September 1958 as a third time violator of the narcotics law, because his two earlier convictions were revealed to the jury to his prejudice. The second and third are illegal arrest and illegal search and seizure.

In arguing his first point, Henderson relies on *Lane v. Warden* (4th Cir.), 320 F. 2d 179, in which it was held that, as a constitutional matter, a fair trial on narcotics charges had

been precluded in a Maryland court by reading to the jury those parts of the indictment, to which Lane had unsuccessfully demurred, which set forth his prior convictions on similar charges. On direct appeal this Court had reached a contrary conclusion in *Lane v. State,* 226 Md. 81, as had Judge Chesnut in the United States District Court for the District of Maryland, in rejecting Lane's petition for habeas corpus. See 207 F. Supp. 780.[1]

Whether the Fourth Circuit in *Lane* was correct in its holding that the former Maryland practice in multiple offender cases, of reading the indictment containing the allegations of prior convictions to the jury and trying the current charge and the issue of previous offenses together, was constitutionally invalid, as distinguished from unwise or unjust as a matter of policy, would seem to be at least fairly debatable in light of the contrary views of other Courts, including: (a) Judge Chesnut's opposite view; (b) the observation of the Ninth Circuit in a footnote in *Pike v. Dickson,* 323 F. 2d 856, 860, in re certain aspects of a fair trial,—"We do not find occasion here to indicate whether we would approve the result reached in the Lane case, upon its facts"; (c) the observation of the Supreme Court in a footnote in *Michelson v. United States,* 335 U. S. 469, 93 L. Ed. 168, relied on in *Lane* for the proposition that "evidence or allegations of prior crimes are inadmissible at a criminal trial either to establish guilt or to show that a defendant would be likely to commit the crime with which he is charged." (p.

---

1. The practice in Maryland since 1878 had uniformly been to in-include in narcotics indictments allegations of former convictions and to read them to the jury on the theory that such allegations were a necessary part of the multiple offender charges and, therefore, the jury was bound to consider prior convictions before it could find the accused guilty as a multiple offender. Effective January 1, 1962, this Court promulgated Maryland Rule 713, which instituted the practice of referring to the prior offenses only in an addendum to the indictment and provided, if the defendant so elects, for a trial first on the current charge without disclosure to the jury of prior offenses—"if, however, a defendant testifies he may be cross-examined as to previous offenses"—and if the defendant is convicted, a second trial on the issue of the previous convictions.

181 of 320 F. 2d) (in note 8 of page 475 of 335 U. S., the Supreme Court indicated qualifications of this general rule, saying: "* * * as when a prior crime is an element of the later offense; for example, at a trial for being an habitual criminal"); and (d) the opinion of Judge Hutcheson for the United States Court of Appeals for the Fifth Circuit in *Breen v. Beto,* filed January 28, 1965, 341 F. 2d 96, where Judge Hutcheson said:

> "In support of his contention [the same contention Henderson makes], appellant cites and strongly relies on *Lane v. Warden,* 320 F(2) 179 (4th Cir. 1963). This court has never so held, and under the controlling Texas statutes and the authorities we are not disposed to adopt or follow the cited opinion. On the contrary, we are of the firm view that that case was not well decided and that the correct view of the law is otherwise."

Even if we assume *Lane* to be correct on its holding on constitutional grounds, we think it is distinguishable and should be distinguished from the case now before us. In *Lane* the accused objected to the indictment containing the reference to his earlier transgressions. In the present case it is agreed that Henderson had stipulated with the State that he had been found guilty in 1948 in the Criminal Court of Baltimore of narcotics violation and sentenced to eighteen months, and similarly in 1953 had been sentenced to five years and that it would not be necessary for the State to prove the allegations of the two prior convictions as they were stated in the indictment.

The transcript shows that after opening statements to the jury this stipulation was read in open court. Henderson says the prior offenses were referred to by the State's attorney in his opening argument. If they were, it is apparent that the stipulation had been agreed to before the argument began, and no objection to the references was made and no repudiation of the stipulation was attempted. The indictment went into the jury room with the jury but, in view of his stipulation, Henderson can hardly claim prejudice on this ground.

In the opinion in *Lane* (at p. 182 of 320 F. 2d), the Court concedes that if the defendant himself elects to initiate a char-

acter inquiry, "* * * he throws open the entire subject and makes himself vulnerable where the law otherwise shields him" and, also, that if the defendant voluntarily submits himself as a witness, "* * * he may, for purposes of impeachment, be interrogated concerning prior convictions and, in case he denies such convictions, proof thereof may be presented."

We think that Henderson, by voluntarily and affirmatively agreeing for the record at the beginning of the trial that he had two prior narcotics convictions, as much as if he had initiated a character inquiry or taken the stand, threw the entire subject open and put himself in a position where he can not now claim that the holding of *Lane* is applicable to his case, or that there was constitutional infirmity which invalidated his conviction. See *Beard v. State,* 216 Md. 302.

Henderson's two remaining contentions require little discussion. If he were arrested illegally, that fact alone and of itself would not affect the jurisdiction of the court nor preclude a trial and conviction of the offense charged; *Matthews v. State,* 237 Md. 384, and cases cited. If as a consequence of an illegal arrest and incident thereto evidence was searched for and seized and used against him, a question would arise as to whether *Mapp v. Ohio,* decided after Henderson's trial, precluded its use as evidence. That is not the case here. The record contained testimony of the police that four officers saw from a car in which they were cruising two known narcotic addicts standing under a street lamp at 3:30 a.m. As the car drew to a stop to permit questioning of the men, Henderson began to run east on Fayette Street. Two of the officers set off in pursuit and, when after a short chase Henderson fell, took him in custody. One of the officers had seen Henderson throw away a small article during the chase and after a search of a church yard, which had been passed in his run up the street, found a package which contained a white powder, later identified as a narcotic.

In *Buettner v. State,* 233 Md. 235, we reiterated that one who abandons or discards property cannot complain with effect of the later seizure of such property by the police, or of its use against him in court. See also *Matthews v. State, supra,* and *Abel v. United States,* 362 U. S. 217, 241, 4 L. Ed. 2d 668.