James William **HENDERSON**

v.

**WARDEN, MARYLAND PENITENTIARY.**

**Civ. No. 16338.**

United States District Court
D. Maryland.

Nov. 1, 1965.

Supplementary Opinion, Dec. 29, 1965.

---

5. Cf. Note, Informer's Word as the Basis for Probable Cause in the Federal Courts, 53 Calif. L.Rev. 840, 855–856 (1965).

Gerald M. Katz, Baltimore, Md. (court-appointed), for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and John C. Cooper, III, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

Henderson's petition for a writ of habeas corpus, which challenges his conviction as a third offender under the Maryland narcotics laws,[1] is based on three grounds:

(1) "That the indictment alleged two prior convictions for violation of the Narcotic laws, and this indictment was made known to the Jury to the petitioner's prejudice during his trial as a third offender when the indictment was read to the jury, and therefore in violation of his constitutional rights."

(2) Illegal arrest, and (3) Illegal search and seizure.

Counsel for Henderson and the Assistant Attorney General in charge of the case joined in requesting the Court to rule on the first ground at this time, reserving for future hearing the second and third grounds. The request was granted, testimony was taken on the first issue and the legal points have been fully argued.

 At the hearing counsel for Henderson advanced two additional grounds, namely, (4) delay in appointing counsel, and (5) incompetency of counsel. Since neither of these grounds has ever been presented to the State Courts, this Court will not consider them until Henderson has exhausted his State remedies.

Henderson was indicted in July, 1958, for violation of the Maryland narcotics law. The indictment contained six counts. The first two charged respectively that Henderson had (1) possession and (2) control of a narcotic drug on May 4, 1958. The third and fourth counts each recited that he had been convicted of certain violations of the narcotics laws of the State of Maryland in the Criminal Court of Baltimore on April 20, 1953, and charged him respectively with (3) possession and (4) control of a narcotic drug on May 4, 1958. The fifth and sixth counts each recited that on February 2, 1948, Henderson had been found guilty in the Criminal Court of Baltimore of violation of the narcotics laws of the State of Maryland and that he had also, on April 20, 1953, been found guilty in that Court of violation of said narcotics laws, and charged him respectively with (5) possession and (6) control of a narcotic drug on May 4, 1958. He was found guilty generally and was sentenced as a third offender to 12 years in the Maryland Penitentiary from May 4, 1958.

His complaint under the first ground of his present petition is that the indictment was read in its entirety in the opening statement by the Assistant State's Attorney to the jury, who were thus informed of Henderson's prior convictions. This is not denied by the State. The competent and careful lawyer who prosecuted the case as Assistant State's Attorney testified that the procedure followed in Henderson's case was the procedure generally followed by the State's Attorney's office at the time of the trial.[2] The Assistant State's Attorney tele-

---

1. See generally Anno.Code of Md., Art. 27, secs. 276–306; particularly see sec. 300.

2. The Maryland law at that time required that in multiple offender charges under the narcotics laws, the indictments charging the defendant as a second or third offender had to contain allegations of the prior convictions. The fact of a prior conviction had to be proved at the trial to justify punishment as a subsequent offender. See Beard v. State, 216 Md. 302, 308, 140 A.2d 672 (1958), and Lane

v. Warden, 4 Cir., 320 F.2d 179, 181 (1963). The Maryland practice has since been changed by Rule 713, effective January 1, 1962, whereby the indictments in such cases as this refer to the prior offenses only in an addendum, and the defendant can elect to have one trial solely on the current charge, and if he is convicted, a second trial on the multiple offender charge. See Henderson v. Warden, 237 Md. 519, 521, 206 A.2d 793 (1965), and Lane v. Warden, 320 F.2d at 184.

phoned defendant's counsel and asked for a stipulation of facts with respect to the prior convictions. In this case, as in nine out of ten cases at that time, defendant's counsel agreed to the stipulation, since it minimized the amount of time which would be devoted to establishing the prior convictions and was generally considered by defendants' counsel to be more favorable to defendants than requiring proof of prior convictions.[3]

At the trial Henderson was represented by counsel who discussed the case with him three or four times before the day of the trial. Henderson testified at the hearing in this Court that he had discussed the procedure with his counsel, that it did not seem right to him, but that he did not ask his attorney to do anything about it after his attorney had told him that it was the established procedure. No objection was made by either Henderson or his counsel to the reading of the indictment. Henderson took the stand on two occasions: first, out of the presence of the jury to contest the voluntariness of his confession; second, in his own defense for other purposes. The evidence shows that his prior convictions were brought out at those times. Extracts of Henderson's testimony at his trial were made available to this Court, although the testimony at the trial was not written up in full because Henderson and his attorney filed no motion for a new trial and took no appeal, evidently because the sentence had been substantially less than the possible maximum of 20 years.

Henderson relies on the case of Lane v. Warden, 320 F.2d 179 (1963), wherein it was decided that a similar Maryland conviction, in 1960, was rendered invalid because the reading to the jury of the allegations with respect to the defendant's prior convictions at the outset of the trial destroyed the impartiality of the jury and violated the requirement of due process. On May 19, 1964, after the Lane decision, Henderson filed a petition under the Maryland Post Conviction Procedure Act. Counsel was appointed to represent him, and two hearings were held before Judge Harris in the Criminal Court of Baltimore, at which testimony was taken. The points raised in that proceeding were similar to the points raised in the petition in this Court. The point now being considered—the reading of the indictment—was argued and briefed, but no testimony was offered on that point before Judge Harris, who, after consideration, filed a careful memorandum and order denying petitioner's first contention. Thereafter, Judge Harris filed a second memorandum and order denying petitioner's second and third contentions.

In a full opinion, after argument, the Court of Appeals of Maryland denied leave to appeal. Henderson v. Warden, 237 Md. 519, 206 A.2d 793 (1965). The

3. After the jury had been sworn and opening statements made, the Assistant State's Attorney made the following statement:

"MR. KOUTZ: May it please Your Honor and Members of the jury, we have an agreement or stipulation to enter into at this time. Your Honor, it is stipulated and agreed between the State and the Defendant James William Henderson and the Defendant Theodore Shellington that under indictment number 346 of the docket of 1948 in the Criminal Court of Baltimore City the defendant Henderson and the defendant Shellington were jointly charged with two other defendants and that they were each found guilty and sentenced to a term of not more than 18 months in the House of Correction for having violated the narcotic laws of this State.

"It is further stipulated and agreed between the counsel and the defendants and the State that under indictment 1048 of the docket of 1953 in the Criminal Court of Baltimore City that the defendant James William Henderson was found guilty of having violated the narcotic laws and was sentenced to a term of five years in the House of Correction which term dated from March 6, 1953.

"It is further stipulated and agreed, Your Honor, in connection with the offering of those official court records evidence that it will not be necessary for the State to prove in any other wise the fact that these men did have the convictions as were stated in the indictment."

entire opinion of the Court of Appeals dealing with the first ground should be read as a part of this opinion. It need not be physically incorporated herein. Briefly, the Court questioned the decision of the Fourth Circuit in Lane v. Warden, supra, because of (a) Judge Chesnut's opposite view, D.Md., 207 F. Supp. 780 (1962), (b) the opposite views of the Fifth Circuit in Breen v. Beto, 341 F.2d 96 (1965) (see also Reed v. Beto, 5 Cir., 343 F.2d 723 (1965)), (c) the doubt expressed by the Ninth Circuit in Pike v. Dickson, 323 F.2d 856, 860, n. 5 (1963); and (d) footnote 8 to the opinion in Michelson v. United States, 335 U.S. 469, at 475, 69 S.Ct. 213, 93 L.Ed. 168 (1948), where, the Maryland Court felt, the Supreme Court had qualified the rule referred to in the Lane opinion, 320 F.2d at 181.

The Maryland Court further said: "Even if we assume Lane to be correct on its holding on constitutional grounds, we think it is distinguishable and should be distinguished in the case now before us." The principal distinction made by the Maryland Court was that in Lane the accused had objected to the reading of the indictment in his case, whereas Henderson had entered into a stipulation with respect thereto. The Maryland Court concluded:

> "We think that Henderson, by voluntarily and affirmatively agreeing for the record at the beginning of the trial that he had two prior narcotics convictions, as much as if he had initiated a character inquiry or taken the stand, threw the entire subject open and put himself in a position where he can not now claim that the holding of Lane is applicable to his case, or that there was constitutional infirmity which invalidated his conviction. See Beard v. State, 216 Md. 302, 140 A.2d 672."

The evidence at the hearing in this Court on the pending petition confirms the fact that Henderson and his counsel had discussed the matter and decided not to raise the point, but to enter into the proposed stipulation.

The State contends that even under the rule in Faye v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), petitioner should be held to have waived his right to raise the point that he was deprived of his constitutional rights by the reading of the indictment to the jury. It is true that Henderson and his counsel were faced with no such "grisly" choice as was involved in Faye v. Noia, see 372 U.S. at 440, 83 S.Ct. 822,[4] they could have raised the point in the same way it was raised by Lane, see 320 F.2d at 180, or by objection at the trial.

The position taken by the Maryland Court, quoted above, with respect to waiver cannot be followed by this Court in a federal habeas corpus proceeding. Faye v. Noia, 372 U.S. at 426–435, 83 S.Ct. 822. This Court must follow the standards specified by the Supreme Court, as interpreted by the Fourth Circuit in such cases as Bowler v. Warden, 324 F.2d 202, 205 (1964). Applying those principles, this Court cannot find, under all the circumstances of this case, that Henderson voluntarily waived a known right or deliberately by-passed the orderly procedure of the State Courts.

This Court must, therefore, consider whether the decision in Lane v. Warden should be applied retroactively. In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), a habeas corpus case, after reviewing the earlier decisions, the Supreme Court said:

> "Under our cases it appears * * that the effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set 'principle of absolute retroactive invalidity' but depends upon a consideration of 'particular relations * * * and particular conduct * * * of rights claimed to have become vested, of status, of prior determinations deemed to have finality'; and 'of public policy in the light of the na-

---

4. See also Whitus v. Balkcom, 5 Cir., 333 F.2d 496 (1964).

ture both of the statute and of its previous application.' Chicot County Drainage Dist. v. Baxter State Bank, supra, 308 U.S. [371] at 374 [60 S.Ct. 317, 84 L.Ed. 329].

"That no distinction was drawn between civil and criminal litigation is not only shown by the language used not only in Schooner Peggy, supra [United States v. Schooner Peggy, 1 Cranch 103, 2 L.Ed. 49 (1801)], and Chicot County, supra, but also in such cases as State v. Jones, 44 N.M. 623, 107 P.2d 324 (1940) and James v. United States, 366 U.S. 213 [81 S.Ct. 1052, 6 L.Ed. 2d 246 (1961)]. * * * Thus, the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective. * * *

"While the cases discussed above deal with the invalidity of statutes or the effect of a decision overturning long-established common-law rules, there seems to be no impediment—constitutional or philosophical—to the use of the same rule in the constitutional area where the exigencies of the situation require such an application. It is true that heretofore, without discussion, we have applied new constitutional rules to cases finalized before the promulgation of the rule. Petitioner contends that our method of resolving those prior cases demonstrates that an absolute rule of retroaction prevails in the area of constitutional adjudication. However, we believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said, 'We think the federal constitution has no voice upon the subject.'

"Once the premise is accepted that we are neither required to apply, nor prohibited from applying a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. * * *" 381 U.S. at 627–628–629, 85 S.Ct. at 1736.

The Fourth Circuit did not state in Lane v. Warden whether its decision therein should be applied prospectively or retrospectively. This Court must therefore "weigh the merits and demerits * * * by looking to the prior history of the rule * * *, its purpose and effect, and whether retrospective operation will further or retard its operation." 381 U.S. at 629, 85 S.Ct. at 1738.

The purpose of the Maryland practice was stated by the Court of Appeals in Beard v. State, 216 Md. 302, at 308–309, 140 A.2d 672, at 675–676, and by the Fourth Circuit in Lane v. Warden, 320 F.2d at 181. It was not an improper purpose, but it can be achieved more fairly under the new Maryland practice, embodied in Maryland Rule 713, discussed in note 2 above. The Maryland practice provided by Rule 713 conforms to the principles announced in Lane v. Warden, so it is not necessary to give retrospective effect to that decision to further its operation. Other considerations argue against giving retrospective effect to Lane v. Warden. The principle announced therein has not been passed upon by the Supreme Court, although, as noted by the Maryland Court, the Fifth Circuit has refused to follow that decision. The Maryland Court has also refused to follow it, and that circumstance raises serious questions of comity, which should be considered by the federal courts, until the problem is settled by the Supreme Court.

After weighing all applicable considerations, including those referred to by the Maryland Court in the passage quoted above, and the general practice followed in the Maryland Courts for many years, as shown by the testimony in this case and the decisions cited by the Maryland Court in Beard v. State, this Court concludes that the decision of the Fourth Circuit in Lane v. Warden should not be applied retroactively in this case, in which the judgment of conviction became final long before the de-

cision of the Fourth Circuit in Lane v. Warden.

■ The Court will set the case for further hearing on the second and third points. Since testimony was taken and facts found on those points by Judge Harris in the PCPA proceeding, and his decision was approved by the Court of Appeals of Maryland, this Court will first hear argument on the question whether there is any reason why the findings of fact made by Judge Harris on those points should not be accepted by this Court. See Townsend v. Sain, 372 U.S. 293, at p. 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

*Supplementary Opinion*

Pursuant to the last paragraph in the original opinion of this Court herein, the case was set for hearing on the issues of illegal arrest and illegal search and seizure. Both petitioner and the State agreed that if this Court could not accept all or any part of the findings of fact of the State Courts, see Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745 (1963), or if this Court found that additional findings were necessary, they would submit the case to this Court on the record made in the PCPA proceeding, without any additional testimony or other evidence being offered by either side.

Petitioner contends that his arrest was illegal; that the seizure of the glassine envelope containing narcotics was an incident of that arrest; and therefore that the admission in evidence of the envelope and its contents and the testimony with respect thereto violated his rights under the Fourth Amendment made applicable to the States by the Fourteenth Amendment, citing Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Respondent replies that the arrest was legal; that the envelope and its contents had been abandoned by petitioner before they were seized; and that since petitioner's conviction became final before the decision in Mapp v. State of Ohio, the rule in that case is not controlling, citing Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

The basic facts were succinctly summarized by the Court of Appeals in Henderson v. Warden, 237 Md. 519, at 523 (1965), 206 A.2d 793, at 795, as follows:

" * * * The record contained testimony of the police that four officers saw from a car in which they were cruising two known narcotic addicts standing under a street lamp at 3:30 a. m. As the car drew to a stop to permit questioning of the men, Henderson began to run east on Fayette Street. Two of the officers set off in pursuit and, when after a short chase Henderson fell, took him in custody. One of the officers had seen Henderson throw away a small article during the chase and after a search of a church yard, which had been passed in his run up the street, found a package which contained a white powder, later identified as a narcotic."

This statement is not on its face a finding of fact, but a recitation of evidence in the record. Similar facts were, however, found by the Criminal Court (Harris, J.) in the PCPA proceeding, and this Court finds from the record that the summary of the evidence by the Court of Appeals, quoted above, represents the true facts of the case. After carefully analyzing the testimony of the several witnesses, Judge Harris made the following findings:

"1. It must be noted, at the outset, that it is a very common occurrence and a generally accepted practice for a narcotics officer to strike up a conversation with a known addict, for the purpose of eliciting useful information about the narcotics traffic in the city. In the case at bar, Sergeant Wineke testified, and this Court so holds, that this was his purpose in stopping the car. At that moment, petitioner fled.

"In Price v. State, 227 Md. [28] at page 33 [175 A.2d 11], the Court of Appeals stated that 'flight, though

not conclusive, is usually evidence of guilt'. Based on petitioner's admitted flight, the prior knowledge of the officers that he was a narcotics addict, and the suspicious circumstances of the hour and location of petitioner and his companion, this Court holds that Officer Kearney had the right to pursue the petitioner. During the pursuit, Officer Kearney saw petitioner throw a package onto the church property."

■ The hearing in the PCPA proceeding in the Criminal Court before Judge Harris was a full and fair hearing, and this Court will accept the findings of historical facts made therein. Townsend v. Sain, supra. Petitioner admits that he threw the package. This Court further finds that before the package was recovered petitioner had been caught and was being held by another officer near the place where he stumbled.

From these findings and from the record as a whole, this Court finds that petitioner was not arrested at the time the officers stopped the car and accosted him. This Court further finds that petitioner was arrested after he threw the package away but before the package was recovered.

■ The Criminal Court in the PCPA proceeding found the arrest legal, whether it took place before or after the package was recovered, or even before the chase began. The Court cited a number of possible justifications for arrest, one of which, the "nightwalker" law, the State abandoned in this Court. This Court holds that Bowler v. State, 233 Md. 524, 197 A.2d 259 (1964), cited by the Criminal Court in the PCPA proceeding, justified the conclusion that the arrest after the chase was legal under Maryland law, and holds that such conclusion does not violate applicable federal constitutional principles.[1]

■ The Court of Appeals of Maryland did not discuss the legality of the arrest, but after stating the facts as quoted above, said:

"In Buettner v. State, 233 Md. 235, 196 A.2d 465, we reiterated that one who abandons or discards property cannot complain with effect of the later seizure of such property by the police, or of its use against him in court. See also Matthews v. State [228 Md. 401, 179 A.2d 892 (1962)], and Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668.

"We find no error in the refusal of Judge Harris to grant post conviction relief to Henderson."

The ruling of the Court of Appeals is in accord with applicable constitutional principles. The case is clearly distinguishable from such cases as Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), and Wong Sun v. United States, 371 U.S. 471, 482, 83 S.Ct. 407, 9 L.Ed.2d 441 (1965). See Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960), and Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

■ In any event, the conviction became final long before the decision in Mapp v. Ohio. The arrest of petitioner and the recovery of the discarded package were made by State officers. The trial was in a State Court. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731 (1965), holds flatly that in such a situation the rule in Mapp v. Ohio does not apply.[2] In Belton v. State, 228 Md. 17, 178 A.2d 408 (1962), conviction had not become final before the decision of the Supreme Court in Mapp v. Ohio.

---

1. Indeed, such arrest would probably be held legal in a federal criminal proceeding if made by federal officers. A federal court does not have the same right to prescribe state procedures that the Supreme Court has to prescribe procedures in federal criminal proceedings, but this Court must apply the same constitutional tests. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 2d 726 (1963).

2. See also discussion in Section V of the opinion of this Court in Smith v. Brough, Warden, 248 F.Supp. 435.

For the reasons set out in the original opinion herein and in this supplementary opinion, the relief prayed must be and it is hereby denied, and petitioner is remanded to the custody of the respondent.