**UNITED STATES of America ex rel. Andrew WALLEN, Petitioner,**

v.

**WARDEN OF GREEN HAVEN STATE PRISON, AT STORMVILLE, NEW YORK, and the People of the State of New York, Respondent.**

**No. 65 Civ. 2417.**

United States District Court
S. D. New York.
July 27, 1966.

Anthony F. Marra, New York City, Legal Aid Society, Joshua Koplovitz, New York City, of counsel, for petitioner.

Louis J. Lefkowitz, Atty. Gen., by Iris Steel, New York City, of counsel, for respondent.

## OPINION

EDELSTEIN, District Judge.

This is an application for a writ of habeas corpus on the grounds that the applicant is being held in custody in violation of the Constitution of the United States, 28 U.S.C. § 2241(c) (3) (1964). Petitioner was convicted, after a jury trial in the New York County Court of General Sessions, of two counts of robbery in the first degree and one count of possessing a pistol after prior conviction. He was sentenced on January 9, 1948, to concurrent terms of from fifteen to thirty years on each of the robbery counts, and sentence was suspended on the conviction for possession of a gun after prior conviction. Petitioner filed a notice of appeal in February 1948, but in January 1950 the appeal was dismissed for failure to prosecute. In July 1963 petitioner sought a writ of error *coram nobis* in the state courts alleging, in effect, that the prosecutor knowingly used perjured testimony at his trial. The petition for a writ of error *coram nobis* was denied without a hearing by the Supreme Court of New York County and in December 1963 he was granted leave to appeal *in forma pauperis* from that decision and counsel was assigned. On appeal from the denial of *coram nobis* petitioner was permitted to reinstate his appeal from the original conviction in 1948. Before the Appellate Division petitioner also alleged the use at trial of evidence obtained as a result of an unlawful search and seizure and the introduction into evidence of involuntary confessions. The Appellate Division, without remanding for a hearing and without opinion, unanimously affirmed both the judgment of conviction and the denial of *coram nobis*. The New York Court of Appeals denied leave to appeal on July 8, 1965. Petitioner subsequently commenced this action for habeas corpus and, after reviewing the State Court proceedings, this court ruled that petitioner had exhausted his presently available state remedies[1] and ordered counsel appointed.

In a brief subsequently filed on behalf of petitioner, assigned counsel urges that petitioner was denied due process by: (1) the prosecution's knowing use of perjured testimony; and (2) the reference at trial to petitioner's prior conviction. It is also alleged that: (3) incriminating statements obtained from petitioner as a result of coercion and in violation of his right to counsel were used against him; and (4) the fruit of an unlawful search and seizure was introduced at trial.

Petitioner's first contention (the knowing use of perjured testimony) is based solely on the transcript of his trial and the transcript of proceedings re-

1. The applicability of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 to the instant case was fully litigated in the state courts on the reinstated appeal. Respondent, in its affidavit in opposition to the petition for habeas corpus urged that petitioner had failed to exhaust his presently available state remedies because the period in which petitioner might seek certiorari had not yet elapsed. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963), eliminated the requirement of a petition for certiorari before habeas corpus could be sought. In any event, the time to petition for certiorari has now run and respondent's argument is therefore moot.

lated to the sentencing of a codefendant, William Maniscalco, who testified against petitioner at trial. Since there is no dispute about the facts petitioner has not sought a hearing as to this claim, which was the sole issue in the state *coram nobis* decision. The dispute relates to the legal interpretation applicable to the conceded facts and therefore no hearing is required. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963). After examining the proceedings relevant to the sentencing of William J. Maniscalco and the transcript of Maniscalco's testimony against petitioner at trial this court finds that there was no perjury, the jury was not misled, and petitioner was not, in this regard, denied a fundamentally fair trial.

Petitioner's second contention (raised for the first time in appointed counsel's brief) is that pursuant to the indictment's inclusion of the crime of criminally possessing a pistol after prior conviction, petitioner's prior conviction for robbery was alleged in the indictment, referred to by the prosecution in its opening statement and proved before the jury. Petitioner urges that this procedure prejudiced the jury against him and deprived him of a fair trial, see Lane v. Warden, 320 F.2d 179 (4th Cir. 1963), on the robbery counts of which he was convicted and for which he is now in prison.

This issue was not presented in the *coram nobis* proceeding or in the reinstated appeal. Since the denial of due process may normally be tested in the New York courts by *coram nobis*, see *e. g.*, People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965); People v. Codarre, 10 N.Y.2d 361, 223 N.Y.S.2d 457, 179 N.E.2d 475 (1961); People v. Silverman, 3 N.Y.2d 200, 165 N.Y.S.2d 11, 144 N.E.2d 10 (1957); People v. Sullivan, 3 N.Y.2d 196, 165 N. Y.S.2d 6, 144 N.E.2d 6 (1957), this court would normally remit petitioner to his state remedy. 28 U.S.C. § 2254 (1964); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822 (1963); United States ex rel. Krzywosz v. Wilkins, 336 F.2d 509, 511 (2d Cir.

1964); cf. United States ex rel. Martin v. McMann, 348 F.2d 896 (2d Cir. 1965). The New York courts, however, have uniformly held that the procedure here challenged does not violate due process. In People v. De Santis, 305 N.Y. 44, 110 N.E.2d 549 (1953) the Court of Appeals ruled that:

> "It was not reversible error to include in the indictment allegations charging defendant as a prior offender, and to receive proof thereof at the trial. This has long been the settled practice in this State, Johnson v. People, 55 N.Y. 512; People v. Sickles, 156 N.Y. 541, 51 N.E. 288; People v. Gowasky, 244 N.Y. 451, 155 N.E. 737, 58 A.L.R. 9, and countless convictions were based on such indictments." Id., 305 N.Y. at 46, 110 N.E.2d at 549.

Judge Fuld dissented on the grounds of "essential concepts of fairness" which, he urged, required that the district attorney use the statutory procedure relevant to the sentencing of second offenders rather than including the prejudicial material in the indictment and presenting it to the jury. Prior to 1961 the complained of procedure was authorized by § 275-b of the New York Code of Criminal Procedure where "such prior conviction affects the degree of crime charged in the indictment." Convictions resulting from this procedure have been upheld by the New York courts even where the first conviction had been subsequently set aside for denial of right to counsel, People v. Branton, 221 N.Y.S.2d 496 (Nassau County Ct.1960), or where the defendant admitted his former conviction and objected to the introduction of proof on the grounds that there was no issue upon which the jury could pass. People v. Sickles, 156 N.Y. 541, 51 N.E. 288 (1898). In 1961, § 275-b was amended to preclude an accusation of prior conviction in the indictment (confining the allegation to other court papers) but to permit evidence of a prior conviction at trial if the defendant denied the conviction or stood mute when arraigned out of the jury's hearing. In People v. Blume, 12 N.Y.2d 705, 233 N.Y.S.2d 761,

186 N.E.2d 120 (1962), cert. denied, 374 U.S. 843, 83 S.Ct. 1897, 10 L.Ed.2d 1062 (1963) the New York Court of Appeals declined to apply the 1961 amendment to cases tried prior to the statute's amendment, but which were apparently still pending on appeal, stating that "such construction does not deny due process of law or the equal protection of the law." Although it might be argued that the *Blume* case decided only that failure to apply the 1961 amendment to cases pending on direct appeal would not deny due process or equal protection and expressed no opinion on the Constitutionality of the procedure itself, the citation in the *Blume* case to In the Matter of Berkovitz v. Arbib & Houlberg, Inc., 230 N.Y. 261, 130 N.E. 288 (1921) (Cardozo, J.), does not support such an interpretation. The relevant portion of the *Berkovitz* opinion indicated:

"Changes in the form of remedies are applicable to proceedings thereafter instituted for the redress of wrongs already done. * * * A different problem arises when proceedings are already pending. There is then a distinction to be noted. The change is applicable even then if directed to the litigation in future steps and stages. * * * [citations omitted] * * *. It is inapplicable unless in exceptional conditions, where the effect is to reach backward, and nullify by relation the things already done [citations omitted]. * * * There can be no presumption, for illustration, that a statute regulating the form of pleadings or decisions is intended to invalidate pleadings already served * * *." Id. at 270, 130 N.E. at 290.

By treating the amendment to § 275-b as simply altering the form of "pleadings" it was thus unnecessary to apply the change even to a case still pending in the normal appellate process. See generally Simonson v. International Bank, 14 N.Y.2d 281, 288–290, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964). Since the New York courts have ruled that legal changes of Constitutional dimension will be applied to cases still pending in the normal

appellate process, see People v. Muller, 11 N.Y.2d 154, 227 N.Y.S.2d 421, 182 N.E.2d 99 (1962); People v. Loria, 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478 (1961), the proper interpretation of *Blume* is that the statutory change in question was deemed one of form or procedure and did not affect any Constitutional right. Such a construction of the statute is fully consistent with prior New York case law. Moreover, there is nothing in the cases applying *Blume*, see People v. Grande, 19 A.D.2d 655, 241 N.Y.S.2d 917 (2d Dept.1963) (memorandum decision); People v. Shaw, 18 A.D.2d 823, 236 N.Y.S.2d 1019 (2d Dept.) (memorandum decision), cert. denied, 375 U.S. 847, 84 S.Ct. 101, 11 L.Ed.2d 74 (1963), to cast doubt upon the prior law and *Blume* did in fact affirm a conviction based on the same procedure challenged here. There appears no possibility that the New York courts would afford petitioner relief and it is therefore appropriate to decide the question raised.

The Fourth Circuit's position in Lane v. Warden, 320 F.2d 179 (4th Cir. 1963) tends to support petitioner's contention that he has been denied due process. But in the instant case, unlike *Lane* petitioner's indictment was not read to the jury at the start of trial nor were the details of the prior conviction presented. Petitioner, in effect, would have this court broadly construe *Lane* as holding that any reference to a prior conviction in the prosecution's opening statement or the introduction of any evidence of a prior conviction (assuming that the defendant did not take the stand or put his character in issue) is *per se* a denial of due process even though the prior conviction is a necessary element of the crime for which the defendant is on trial.

The Fifth Circuit, apparently construing *Lane* in a manner similar to petitioner's contention here, has expressly refused to follow it. See e. g., Reed v. Beto, 343 F.2d 723 (5th Cir. 1965) (Friendly, C. J. sitting by designation and joining in the opinion), cert. granted, 382 U.S. 1025, 86 S.Ct. 649, 15 L.Ed.2d 539 (1966); Breen v. Beto, 341 F.2d 96 (5th Cir.

1965). The Ninth Circuit has declined to comment on *Lane,* Pike v. Dickson, 323 F.2d 856, 860 n. 5 (9th Cir. 1963), cert. denied, 377 U.S. 908, 84 S.Ct. 1164, 12 L.Ed.2d 179 (1964), and the Second Circuit's position can only be described as less than definite. Compare United States ex rel. Shaw v. Wilkins, M.R. 364 2d Cir., Mar. 12, 1965 (denying certificate of probable cause although similar due process contention raised); United States ex rel. Lewis v. LaVallee, M.R. 669, 2d Cir., October 25, 1965, cert. denied, Lewis v. LaVallee, 382 U.S. 1029, 86 S.Ct. 653, 15 L.Ed.2d 542 (1966) (same), with United States v. Martinez, 333 F.2d 80, 82 (2d Cir.), cert. denied, 379 U.S. 907, 85 S.Ct. 199, 13 L.Ed.2d 178 (1964) (citing *Lane* with approval). The only case in this district cited by either of the parties, United States ex rel. Jenkins v. Follette, 65 Civ. 3574, S.D.N.Y., Dec. 29, 1965, 257 F.Supp. 533, adopts the 5th Circuit position but also distinguishes *Lane* on its facts.

The due process clause of the Fourteenth Amendment has long been construed to guarantee fundamental fairness in state criminal proceedings, Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), but of late the concept of fundamental fairness has undergone substantial expansion. See, e. g., Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The facts in *Lane* cried out for relief.

"At the outset of Lane's trial the three indictments, each averring in repetitious fashion the details of two prior convictions for violations of the Maryland narcotics laws, were read to the jury. \* \* \* Moreover, the likelihood of prejudice was enhanced in this case by the fact that the prior convictions of which the jurors were informed involved narcotics violations quite similar to those for which Lane was being tried." Lane v. Warden, supra, 320 F.2d at 185.

The Fourth Circuit in deciding *Lane,* however, failed to refer to the state's interest in the finality of cases long since decided. The right to an impartial jury, which the *Lane* court found violated, certainly goes to "the fairness of the trial—the very integrity of the fact-finding process," Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965) and its denial contaminates "a criminal proceeding with the clear danger of convicting the innocent." Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed. 2d 453 (1966). Linkletter and Tehan almost certainly suggest the retrospective application of the *Lane* decision, but see Henderson v. Warden, 248 F.Supp. 917 (D.Md.1965), with all that such application would imply. A prospective legislative change in procedure, such as occurred in New York, or a prospective state court ruling such as occurred in Connecticut, State v. Ferrone, 96 Conn. 160, 169, 171–176, 113 A. 452 (1921), is a better solution than a sweeping Constitutional mandate. Moreover, it is certainly possible to read *Lane* as merely exposing to Constitutional attack (retrospectively applied) those cases in which the procedure followed was truly shocking and contrary to fundamental concepts of ordered justice, rather than all cases in which evidence of prior convictions is presented even though the defendant has not chosen to testify. Such a balanced construction would permit state legislative or state judicial changes (prospectively applied) and a case by case determination, based on a careful consideration of the facts, of convictions long since final or emanating from jurisdictions declining to make changes in their procedures. It is this balanced construction which this court adopts.

New York has by statute altered its procedure but it is clear that the New York courts would decline to apply that change to the instant case. People v. Blume, 12 N.Y.2d 705, 233 N.Y.S.2d 761, 186 N.E.2d 120 (1962), cert. denied, 374 U.S. 843, 83 S.Ct. 1897 (1963). It is therefore necessary for the court to re-

view the manner in which the challenged material was used at petitioner's trial. Some of the criteria to which the court might appropriately look when determining the fundamental fairness of petitioner's trial include: (a) whether the indictment was read to the jury before the taking of testimony; (b) whether repetitious details concerning the prior convictions were presented; (c) whether the details of the prior offense were similar to the details of the offense for which petitioner was being tried; (d) the manner in which the evidence of prior convictions was presented; (e) the comments, if any, by the prosecutor; and (f) whether limiting instructions were requested by defense counsel and given or refused by the court. In the instant case the indictment was not read to the jury at all at the outset of the trial although it was referred to in the judge's charge. It was indicated that the prior conviction was for robbery, but there were no repetitious references to the details of the prior crime. The details of the prior offense were never related to the jury. No formal proof of petitioner's prior conviction was ever offered but the conviction was stipulated to by both petitioner and his counsel. The com-

ment by the prosecution in its opening statement was not prejudicial, on the contrary the prosecution was careful to inform the jury of the purpose of the introduction of evidence of a prior conviction and the significance of that evidence. And the prosecutor did not mention the prior conviction in his summation to the jury. Finally, it should be noted that counsel for petitioner at no time requested a limiting instruction.[2] The only instruction requested by counsel was that the jury might draw no inference from his failure to testify and this was promptly given by the court.[3]

■ Thus, in sharp contrast to the circumstances present in *Lane,* the proceeding at petitioner's trial tended to minimize the impact, if any, of the prior conviction. A careful reading of the record has persuaded this court that petitioner was not denied a fundamentally fair trial, by reference to his prior conviction.

■■ Petitioner's third contention is that incriminating statements, obtained from him as a result of coercion, and in violation of his right to counsel within the meaning of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12

2. The failure of the judge (while charging the prior conviction) to include in the charge a limiting instruction, when none was requested, does not weigh heavily against the fairness of the proceedings. It may well be that the failure to request such an instruction was the result of the fairness of the prosecutor's opening remarks and defense counsel's desire not to focus the jury's attention on the prior conviction. Indeed, in granting the defense's request for an instruction that defendant's failure to testify could not weigh against him, the trial judge remarked that "I never charge that unless I am requested to charge." The judge thereby indicated his awareness of the tactical problem faced by defense counsel; whether the favorable nature of the requested charge would be offset by its tending to focus the jury's attention on a particular aspect of the case. The question presented in the instant case is not the problem of a knowing waiver of a constitutional right, see Fay v. Noia, 372 U.S. 391, 438–439, 83

S.Ct. 822 (1963), since the trial occurred long before the *Lane* case was decided. See United States v. Currie, 354 F.2d 163, 165–166 (2d Cir. 1965); United States ex rel. Daskal v. Nena 361 F.2d 178 (2d Cir. 1966). The question rather is what weight should be attached to the failure to provide a limiting instruction in the absence of any request for one.

3. The only portion of the charge which could possibly be considered prejudicial is the trial judge's statement that although a prior conviction was not evidence of guilt, it could be considered in determining the credibility of a witness. Petitioner did not take the stand. His co-defendant, Glinsky, did, however, take the stand and Glinsky's credibility was very much in issue. The court related that portion of the charge to Glinsky. T. 243–44. Neither counsel for Glinsky nor counsel for petitioner objected to that portion of the charge and did not request any other charge on the point.

L.Ed.2d 977 (1964) and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), were used at trial.

There is some evidence in the record from which it might be inferred that petitioner had been subjected to coercive methods while detained at the police sta-·tion, two days prior to his appearance at a "line-up."[4] At trial petitioner did not take the .stand. There was testimony at one point by the co-defendant turned informer, Maniscalco, that petitioner admitted his guilt at the police station, but no such confession was ever introduced in evidence and no objection was made to the informer's testimony. The only other inculpatory statement allegedly made by petitioner at the police station occurred during the "line-up." The minutes of the "line-up," which were read to the jury without objection, showed that Maniscalco confessed and implicated petitioner. When petitioner was then asked whether Maniscalco's statements· were true, petitioner answered ambiguously "some of it is true." There were no other incriminating statements attributed to the petitioner during his· police station detention.

It is difficult to classify either of these two items of evidence as an introduction of a coerced confession. See Davis v.. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (June 20, 1966); Haynes v. Washington, 373 U. S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Turner v. Pennsylvania, 338

U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810 (1949); Brown v. Mississippi, 297 U.S 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). Moreover, even if either of these isolated items of testimony be deemed the introduction of a confession, no objection was made by counsel though the introduction of a coerced confession had been held a denial of due process long before petitioner's trial. See, e. g., Lisenba v. California, 314 U.S. 219, 236–237, 62 S. Ct. 280, 86 L.Ed. 166 (1941); Brown v. Mississippi, supra. Counsel for petitioner's co-defendant, Glinsky, at one point objected to testimony regarding admissions allegedly made at the police station. Petitioner's counsel, however, specifically stated that he did not join in the objection. T. 154–56. See, e. g., United States v. Del Llano, 354 F.2d 844, 847–848 (2d Cir. 1965); United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). The only evidence against petitioner which clearly- amounted to the introduction of a confession was the testimony of a state parole officer. The officer testified, without objection, that he had interviewed petitioner in the city prison subsequent to petitioner's arraignment and that petitioner had told him (the parole officer) that petitioner had committed two of the robberies in concert with the co-defendant Glinsky and the informer Maniscalco. There is no allegation that the confession to the parole officer was anything except completely voluntary and there is nothing in the record to suggest otherwise.

4. Petitioner also alleges that co-defendant, Edward Glinsky, made a confession implicating petitioner only after he (Glinsky) was beaten on several occasions by the police. The police officer testified and conceded that he struck Glinsky once, when Glinsky used profane language. Glinsky took the stand and testified that he had been struck on several occasions but denied making any incriminating statements and the prosecution did not introduce the alleged confession. The court charged:

"with reference to the admissions—any admissions made by any of the

defendants—any admissions that may have been made by any of these defendants at any time are binding only upon the person making that admission and must be considered as to the guilt or innocence only of the person you fnd made it." (T. 257)

Greenwell v. United States, 119 U.S.App. D.C. 43, 336 F.2d 962, 968–969 (D.C. Cir.1964), does not require, under all of these circumstances, that petitioner's conviction should be vacated as constitutionally defective. See Butler v. United States, 350 F.2d 788 (4th Cir. 1965) (same case).

 The main thrust of petitioner's argument is that he was denied his right to counsel at the police station within the meaning of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758 (1964) and also when interviewed by the parole officer, within the meaning of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199 (1964). Subsequent to the filing of assigned counsel's brief for petitioner in this court, however, the Supreme Court has held that *Escobedo* applies only to cases brought to trial after that decision was announced. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (June 20, 1966). The *Escobedo* claim, therefore, need not be considered. Respondent urges that *Massiah* is in no way applicable to the instant case since all of petitioner's statements (including his statement to the parole officer) were made prior to his indictment.[5] It is perhaps more appropriate to consider the constitutionality of admitting the post-arraignment interview statement in the light of White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) and Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). In any event there can be little doubt that the right to counsel attaches at least at the time of arraignment (in the form of that right applicable to petitioner). There is no allegation, however, and nothing in the record to suggest a failure to warn petitioner of his rights at his arraignment. There is no allegation and nothing in the record to suggest that he requested and was refused an opportunity to consult with counsel, either prior to or during the interview with the parole officer. In any event, this issue was never raised in the state court proceedings. At the very least petitioner should be required to exhaust his presently available state remedies with regard to the question of whether his statement to the parole officer was obtained in violation of his right to counsel, in the form that right is applicable to him. 28 U.S.C. § 2254 (1964); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822 (1963); United States ex rel. Krzywosz v. Wilkins, 336 F.2d 509, 511 (2d Cir. 1964).

The final claim urged by petitioner is that the fruits of an unlawful search and seizure were introduced at his trial. Since it is undisputed that there was no search warrant the search would be justifiable only if incident to a lawful arrest. There is a dispute as to the facts surrounding the arrest of petitioner and his co-defendant, therefore if Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684 (1961) was applicable to the instant case, a hearing would be required. Townsend v. Sain, supra. *Mapp*, however, is not applied retroactively. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731 (1965). In *Linkletter* the Court adopted an impure definition of retroactivity. See generally Mishkin, The Supreme Court 1964 Term, Foreword: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harv.L.Rev. 56 (1965). The test adopted in Linkletter, supra, 381 U.S. at 622 & n. 5, 85 S.Ct. 1731, reaffirmed in Tehan v. United States ex rel. Shott, 382 U.S. 406, 409 & n. 3, 86 S.Ct. 459 (1966), and accepted by the Second Circuit in United States ex rel. Romano v. Fay, 360 F.2d 389, 390 (2d Cir. 1966), is whether the state court conviction had become "final" prior to the date on which the relevant Supreme Court decision was handed down.

> "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision * * *." Linkletter v. Walker, n. 5, 85 S.Ct. 1731, 1734.

In Tehan v. United States ex rel. Shott, supra n. 3, the rule was restated with added clarification. No problem of retroactive application was deemed involved

---

5. Even if *Massiah* were applicable to a pre-indictment interrogation it has been held not to be retroactive in this circuit. United States ex rel. Romano v. Fay, 360 F.2d 389, 390 (2d Cir. 1966). Thus, the portion of this court's opinion, *infra*, dealing with *Mapp* is also applicable to the *Massiah* claim.

in "cases still pending on direct review at the time it [the relevant decision] was announced" and that the criteria enumerated in *Linkletter* were to be applied conjunctively so that all needed to be satisfied prior to the Court's decision, for the conviction to have become "final." Ibid.

In the instant case this court's independent review of the Appellate Division records shows that in December 1963, the Appellate Division granted defendant's application to appeal from the denial of *coram nobis* and ordered counsel appointed. Counsel, apparently unaware that petitioner's appeal from conviction had been dismissed for failure to prosecute, included in his brief which was filed in the autumn of 1964 arguments related to the fairness of the trial and not related to the *coram nobis* proceedings (which had been confined to the knowing use of perjury issue). Thereafter, on November 20, 1964, the district attorney moved to dismiss so much of the appeal as related to the judgment of conviction. On November 30, 1964, petitioner's counsel served a formal motion to reinstate the original appeal, and on December 3, 1964, served an affidavit in opposition to the district attorney's motion. Both motions were made returnable on the same day. On January 26, 1965, the Appellate Division entered two orders, (1) denying the district attorney's motion to dismiss the appeal from the convictions as "academic" and (2) granting petitioner's motion to reinstate the appeal and vacating its order of January 31, 1950, which had dismissed the appeal for failure to prosecute. Thus, the order dismissing petitioner's appeal was not vacated until January 26, 1965, and therefore on June 19, 1961 (the date on which *Mapp* was decided) that order was still in full force and effect. The court cannot accept the legal fiction that because petitioner's appeal was "reinstated" in January 1965, it was "pending" in 1961. Since petitioner's appeal was not "pending" the only remaining question is whether his conviction was "final" prior to the Court's decision in *Mapp*.

Prior to the relevant date at least two of the criteria set forth in note 3 to *Tehan* and note 5 to *Linkletter* were satisfied, the judgment of conviction had been rendered and the time for petition for certiorari had elapsed. Thus if the availability of appeal had been exhausted prior to the Court's decision in *Mapp*, petitioner's conviction was "final" and *Mapp* therefore would not be applicable to him. Linkletter v. Walker, supra. Arguably the New York courts might have allowed petitioner to reinstate his appeal at any time subsequent to the dismissal for failure to prosecute. But contending that the availability of appeal had thus not been exhausted would, in effect, mean that such availability would never be exhausted whenever there was a dismissal for failure to prosecute. Moreover, such a result would place petitioner in a better position than contemporaries who had properly prosecuted their appeals and had their convictions affirmed (or leave to appeal denied). In the instant case such an affirmance or denial on the *Mapp* issue would have been inevitable since *Mapp* had not yet been decided.

The underlying policy considerations that led the Supreme Court to refuse to apply *Mapp* retrospectively are certainly applicable in this case. The deterrence of police misconduct would not be served by *Mapp's* application to this conviction, now more than seventeen years old. The same considerations of sound judicial administration involving the availability of witnesses and evidence many years after a conviction also weigh against *Mapp's* application here. Indeed, the instant case is stronger than *Linkletter* since this petitioner was tried *before* Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) was decided, and therefore, unlike *Linkletter*, the element of reliance by law enforcement authorities clearly weighs against *Mapp's* application. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. (June 20, 1966); Mishkin, supra at 73–74. This court concludes that petitioner's conviction was "final"

prior to June 19, 1961, and therefore Mapp v. Ohio is not applicable to him.[6]

 ·Finally, it should be noted that there is no claim that petitioner sought and was denied advice on how to prosecute the appeal which he had properly noticed. Cf. United States ex rel. Mitchell v. Follette, 358 F.2d 922 (2d Cir. 1966). The state is not under a constitutionally imposed affirmative obligation to advise him how to proceed or to encourage him to do so. See United States ex rel. Bjornsen v. LaVallee, 2d Cir., 364 F.2d 489, July 13, 1966.

Application denied.

So ordered.

---

6. The New York courts have come to the same conclusion, where a defendant does "not obtain leave [to appeal] because of his failure to apply therefor * * *."

People v. Muller, 11 N.Y.2d 154, 156, 227 N.Y.S.2d 421, 422, 182 N.E.2d 99, 100 (1964).